# CITY OF CHICAGO

*v.*

# BENJAMIN F. QUIMBY,

1. BOARD OF TRADE OF CHICAGO. The act of the Legislature of 1859, which conferred upon the Board of Trade power to regulate the inspection of flour, &c., limited to the extent of such authority the power of the city in such matters conferred by the act of 1857; and the consolidated charter of the city, adopted in 1863, was only a compilation and amendment of its charter. There is no conflict in these charters, and no repeal of the powers delegated to the Board of Trade.

2. STATUTES—*repeal thereof.* A repeal by implication only takes place when the provisions of two enactments are repugnant; and whenever a reasonable construction can be given by which both acts may stand, it will be adopted.

3. BOARD OF TRADE—*its power to impose fines.* The ordinance of August 24th, 1863, is repugnant to the charter of the city, which limits its power to impose fines to one hundred dollars; beyond this sum it is inoperative.

4. JURISDICTION OF JUSTICES OF THE PEACE. Under this ordinance, a justice of the peace has jurisdiction.

WRIT OF ERROR to the Circuit Court of Cook County.

This was an action of debt brought by the appellant against the appellee to recover the penalty for the violation of a city ordinance, which required every person, or business firm bringing to, or receiving flour at the Chicago market, to have the same inspected by the "City Flour Inspector," if so desired by the buyer, under a penalty of five dollars for each barrel sold without inspection.

The charter of Chicago, empowered the city to regulate the inspection of flour, &c., and appoint inspectors, and the charter of the Board of Trade likewise delegated to that body similar authority. The defendant was a member of the Board of Trade, and sold to one Stewart, who was also a member of that body, two hundred barrels of flour. Stewart requested an inspection of the flour, which defendant by agreement with him, procured to be done by the Inspector appointed by the Board of Trade, and thereupon delivered the flour.

Upon the trial in the Police Court, judgment was entered for a fine of one hundred dollars and costs of suit against the defendant, from which, the defendant appealed to the Circuit Court, which court, a jury being waived, found the issues for the defendant and entered a judgment for costs in his favor, whereupon, the plaintiff in error prosecutes his writ of error to this court.

Mr. FRANCIS ADAMS and MELVILLE W. FULLER, for plaintiff in error.

Messrs. ARRINGTON and DENT, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This record presents the question whether a member of the Board of Trade is liable to the penalty fixed for the violation of the city ordinance, who sells flour inspected by the officer appointed by the Board of Trade for that purpose. The charter of that body, by the tenth section, declares that the "said corporation shall have power to appoint one or more persons, as they may see fit, to examine, weigh, measure, gauge or inspect flour, grain, provisions, liquors, lumber, or any other article of produce or traffic commonly dealt in by the members of said corporation, and the certificate of such person or Inspector as to the quality or quantity of such articles, or their brand or mark upon it, or upon any package containing such article, shall be evidence between the buyer and seller, of the quality,

grade or quantity of the same, and shall be binding upon the members of said corporation, or others interested, and requesting or assenting in the employment of such weighers, measurers, gaugers or inspectors; nothing herein contained, however, shall compel the employment by any one, of any such appointee." (Sess. 1859, p. 14.) It was under this provision and by the consent of the parties, that this inspection was made.

The city charter of Chicago, which was adopted on the 13th of February, 1863, in the forty-first and forty-second and forty-third divisions of section eight, of chapter four, delegates the power claimed by plaintiff in error. It empowers the city authorities to regulate the inspection of flour, meal, pork, beef and other provisions, and salt sold in barrels, hogsheads and other packages; to regulate the inspection of whisky and other liquors, sold in barrels, hogsheads and other vessels; to appoint inspectors, weighers and gaugers, and to regulate their duties, and prescribe their fees. This seems to comprise the legislation on the subject of inspections within the city of Chicago. This city, under this power, proceeded to adopt an ordinance on the 24th day of August ensuing the enactment of the city charter, regulating the duties of inspector, and prescribing his fees. The first section provides that the Mayor shall, with the approval of the Common Council, biennially appoint the " City Flour Inspector." The ordinance prescribes his duties, requiring him to provide weights, scales, &c.

This ordinance was, however, amended in the following November. The third section of the amendment has this provision : " It shall be the duty of every person, or business firm bringing flour to this market, and every person or business firm receiving flour on consignment, or in any way dealing in flour at wholesale or retail, before selling said flour, if its inspection be desired by the buyer or seller thereof, to procure the same to be inspected by the City Flour Inspector, or his deputy, and such person, business firm, or dealer, shall have the same properly. arranged so as to be accessible for inspection. And term, inspection as employed in this ordinance, and the ordin-

nance to which this is an amendment, shall be held to embrace an examination by an expert or other person of flour by sample or otherwise, in order to ascertain the quality thereof. Every person, business firm, or dealer in flour, violating any of the provisions of this section shall be fined in the sum of five dollars for each and every barrel so sold without such inspection."

The Legislature have the power to pass all laws necessary for police regulations. And it may delegate many of these powers to cities, who alone derive the power to require such inspections from legislative enactment. In 1859, we have seen that the Legislature in creating the Board of Trade, conferred this power upon that body, so far as its members were parties to a sale. And afterward the power to appoint inspectors and regulate the inspection of flour, was given to the city, but that act was only a compilation and amendment of the city charter. This power had been conferred upon the city as early, at least, as in 1857, and when the General Assembly in 1859, confer the power upon the Board of Trade, so far as the members of that body were concerned, they limited the power of the city to that extent. Until after the consolidated charter of the city was adopted in 1863, there was no doubt that each body might exercise the power delegated to each respectively. Nor does it appear that during the four years that each body was exercising the power, during all of which time, in the great City of Chicago, millions of dollars worth, if not of barrels of flour were bought and sold, we hear of no conflict, inconvenience or embarrassment having been experienced, in the greatest grain and flour market of the World.

From these facts, and from the very nature of these provisions, and their necessary practical workings, we can perceive no conflict or repugnancy, in these charters. In one class of cases the Board of Trade Inspector had the power to act when requested by its members, by either the buyer or seller. Whilst, if requested, the City Inspector had the right, in all cases. And when either acted, it was final and without appeal

to the other. Their powers were separate and distinct, and did not conflict any more than do the action of the Inspector and his deputy. We are therefore of the opinion that there is not a repeal of the power conferred upon the Board of Trade, growing out of a repugnancy of the provisions of the two charters. Nor is there a repeal by express language.

It is, however, insisted that as the consolidated charter of the city adopted in 1863, authorized the appointment of an Inspector and the regulation of inspections, was exclusive in the city, and that the power granted to the Board of Trade, was repealed by implication. Such a repeal only takes place when the provisions of the two enactments are repugnant in their provisions. But in all cases if a construction can be reasonably given by which both acts may stand, it will be adopted. But when they are inconsistent, and the provisions of but one of the acts can be executed, we must conclude that the Legislature in adopting the latter, designed to repeal the former.

We have seen that these two provisions are not repugnant. And the power having been conferred on the Board of Trade, whilst the power was in other cases authorized to be exercised by the city, we can not suppose that it was the legislative will, by consolidating the city charter to deprive the Board of Trade of the right to exercise the power conferred by their charter. By consolidating the several acts constituting the city charter into one act, the power to regulate inspections was not enlarged, or materially altered, by the revision, nor did the act thereby acquire any additional force. It was simply re-enacted, and remained the same as it was previously, neither enlarged nor restricted in its scope.

This ordinance imposes a fine of five dollars a barrel, for each violation of the provisions of the ordinance, by having an inspection made by any other person than the City Inspector or his deputy. It is urged, that this ordinance is unreasonable, and is therefore inoperative and void. In the view we

have taken of this case, we deem it unnecessary to discuss that question.

It was likewise insisted, that a justice of the peace had no jurisdiction, because in this case the sale was of two hundred barrels of flour. A forfeiture of "five dollars for each and every barrel so sold, without such inspection," would make an aggregate sum of one thousand dollars. This would be nine hundred dollars beyond the jurisdiction of a justice of the peace. The city charter by the sixty-fourth division of the eighth section of chapter four, has limited the power of the city to impose fines and penalties, for breaches of its ordinances, to one hundred dollars. This ordinance is repugnant to their charter, so far as it operates to impose a penalty beyond one hundred dollars, and is to that extent inoperative. It being a single transaction, a recovery, if otherwise authorized, could only be had to the extent of one hundred dollars, and as the penalty could not be split, such a recovery would be a bar to any future proceedings for the balance. But even if a justice had jurisdiction, a recovery could not be had for more than one hundred dollars, as that is the limit of the penalty that can be imposed, and the transaction being but one and indivisible, that would be the limit of the recovery. The ordinance must therefore be construed to impose a fine of five dollars for each barrel sold in violation of its provisions, until the sum reaches one hundred dollars in the same sale. If the sale exceeded twenty barrels, still it would be but one hundred dollars, whilst if it was of twenty barrels or less it would be five dollars on each barrel. If any other construction, which now occurs to us were given, the ordinance would have to be held void. It therefore follows that a justice of the peace has jurisdiction under this ordinance, as in other cases, as the penalty can never exceed one hundred dollars. The judgment of the Court below must be affirmed.

*Judgment affirmed.*