## Swigart v. People of the State of Illinois.

50   181
154s 284
50   181
60   496
50   181
69   136

1. CRIMINAL LAW—*Horse Racing.*—Horse racing is gaming.

2. CRIMINAL LAW—*Selling Pools—Making Books.*—The betting of money, or selling pools, or making books, upon the result of a horse race, is gaming, because it is betting on a game, and unlawful and void, although the game in itself is not unlawful.

3. CRIMINAL LAW—*Gambling—Lawful and Unlawful Games.*—A game which in itself is not unlawful, may be contested without its constituting gaming, but if money is staked upon it, it becomes gaming, and unlawful.

4. GAMING—*What Constitutes.*—It is the risking of money between two or more persons, on a contest or chance, where one must be the loser and the other the gainer, that constitutes gaming.

5. GAMING HOUSE—*What is, Within the Meaning of the Statute.*— The keeping of a room or space within the grand stand at a race track, for the purpose of book making or selling pools, upon the result of the game of horse racing, where either the pool seller or the pool buyer gets the money and the other loses it, is keeping a common gaming house within the meaning of the statute.

6. CRIMINAL LAW—*What is a Gaming House.*—The keeping of a house or structure of any kind for gaming is an indictable and punishable offense at common law, and so the keeping of a house for persons to frequent and game in, is punishable under Sec. 292 of the criminal code.

7. GAMING—*Pool Selling and Book Making—Act of 1887.*—The legislature manifestly intended by the act of 1887, entitled "An act to prohibit book making and pool selling," to supersede all previous statutes of the State and the common law so far as gaming on horse races was affected thereby, and to make certain and definite what before rested upon judicial construction, and affix increased penalties for violations of

the law with respect to gaming on such races, and to regulate such gaming by validating it when done within the terms of the proviso of the act.

8. CONSTITUTIONAL QUESTIONS—*Jurisdiction of Appellate Court.*— The Appellate Court is without jurisdiction to decide upon the question of validity or constitutionality of an act of the General Assembly; such questions must go directly to the Supreme Court.

9. STATUTES—*Rule of Construction.*—It is a well known rule of construction, that whenever an act of the legislature can be so construed and applied as to avoid a conflict with the constitution and give it the force of law, such construction will be adopted by the courts.

10. COURTS—*Judicial Notice.*—Courts can not be ignorant of that which is the common knowledge of the community in which they sit. A building or yard used for the purpose of book-making or pool-selling is used for the purpose of gaming.

11. STATUTES—*Legislation—Titles of Bills.*—Under a constitutional provision that no act shall embrace more than one subject and that subject be expressed in the title, it was intended that the title of such bill should indicate the subject of its provisions, so that neither the legislators nor the public would be misled thereby.

12. CONSTITUTIONAL LAW—*Granting of Exclusive Privileges.*—The constitution of this State prohibits the granting to any corporation, association or individual, any special or exclusive privilege, immunity or franchise whatever.

13. LEGISLATIVE POWER—*Exemption of Corporations from the Effect of the General Law.*—The legislature has no power to exempt certain corporations from the effect of the general penal law; as well might it undertake to provide that persons of African descent should not be amenable to the laws concerning burglary, or that foreign-born citizens should be exempt from the penalties provided for keeping a dram shop without a license therefor.

14. LAW—*Fundamental Principles.*—It is the fundamental principle of all free and enlightened communities, that every one has a right to demand that he be governed by general rules.

15. STATUTES—*Repeals by Implication—Act of 1887.*—The act of the General Assembly of 1887 entitled "An act to prohibit book-making and pool-selling" is not to be construed as a repealing statute. Repeals by implication are never favored.

16. CRIMINAL LAW—*Statutes Prohibiting Gaming—Repeal.*—Section 127 of the criminal code and section 12 of chapter 5, R. S., prohibiting gaming within two miles of the place where any agricultural, horticultural or mechanical fair is being held, was not repealed by the act of the General Assembly of 1887, entitled "An act to prohibit book-making and pool-selling."

**Memorandum.**—Charge of keeping a gaming house. Appeal from the Criminal Court of Cook County; the Hon. MURRAY F. TULEY,

Swigart v. The People.

Judge, presiding. Heard in this court at the October term, 1892, and affirmed. Opinion filed April 28, 1893.

## STATEMENT OF THE CASE.

This is an appeal from a judgment of the Criminal Court of Cook County, whereby appellant was fined $100.

On the 6th day of September, 1892, a complaint was filed by Thomas Windsor before Charles W. Woodman, a justice of the peace for Cook County, alleging that " M. C. McDonald, George Hankins, Jeff. Hankins, and divers other persons whose names are unknown, keep a common gaming-house in a building, booth, yard, garden, etc., by him or his agent used or occupied, and permit persons to frequent and come together to play for money or other valuable thing, or knowingly rent such place for such purpose."

A warrant was issued on such complaint, and appellant, Joseph Swigart, was arrested, brought before the justice, found guilty of violation of section 127 of chapter 38 of the Revised Statutes of Illinois, and fined $100 and costs. Appeal was taken by Mr. Swigart to the Criminal Court of Cook County. In that court a jury was waived and the cause submitted to the court. Appellant was again found guilty, and assessed a fine of $100. A motion for a new trial was overruled and judgment entered upon the finding. Appeal allowed to the Appellate Court.

APPELLANT'S BRIEF, KNIGHT & BROWN, FRED. W. PACKARD AND LYMAN TRUMBULL, ATTORNEYS.

Criminal statutes are to be strictly construed. General words following specific enumeration, only include such things as are enumerated. Marquis v. City of Chicago, 27 App. Ct. 251; Shirk v. People, 121 Ill. 61; In re Swigert, 119 Ill. 83; State v. Bryant, 90 Mo. 534; People v. Goldman, 1 Idaho, 714; State v. Baker, 2 S. W. Rep. 836; State v. Hayden, 31 Mo. 35; Huff v. Commonwealth, 14 Grat. (Va.) 648; Commonwealth v. Shelton, 8 Grat. (Va.) 592; Harless v. United States, 1 Morris (Ia.) 169; State v. Moseley, 14 Ala. 390; Norton v. State, 15 Ark. 71; State v. Hawkins, 15 Ark. 259.

Horse-racing and wagers thereon are lawful at common law. Harris v. White, 81 N. Y. 539; Kirkland v. Randon, 8 Tex. 10; Dewees v. Miller, 5 Harr. (Del.) 347; James v. State, 63 Md. 242.

Contesting for or offering premiums on horse-race is not gaming. Wilson v. Conlin, 3 Brad. 517; Delier v. Plymouth Co. Ag. S., 57 Ia. 481; Mullen v. Beach Grove Driving Park, 64 Ind. 202; Porter v. Day (Wis.), 37 N. W. Rep. 259; Harris v. White, 81 N. Y. 539.

Horse-racing is not gaming, and pool-selling is not gambling. State v. Hayden, 31 Mo. 35; State v. Lemon, 46 Mo. 375; James v. State, 63 Md. 242; Harrison v. State, 4 Cold. (Tenn.) 195.

Making wagers on the result of the speed or endurance of horses has never been prohibited by statutes of Illinois prior to said act of 1887. Ransome v. State, 91 Tenn. 716.

The fact that the same has not been included in plain language in former statutes, as used in the act of 1887, shows that the legislature never before contemplated or intended any [like prohibition as to pool-selling or horse-racing. The proviso in act of 1887 expressly exempts appellant from liability. Brennan v. Brighton Park Racing Asso., 63 N. Y. Sup. Ct. R., 56 Hun, 188; Winchester v. Nutter, 52 N. H. 507.

Appellees' Brief, John S. Miller and George A. Du Puy, Attorneys.

Appellees contended that betting money on horse-races is gaming and in violation of law. Tatman v. Strader, 23 Ill. 493. A contract in aid of the offense of gaming, which is prohibited by statute, is void and can not be recovered upon. Mosher v. Griffin, 51 Ill. 184.

That pooling schemes contemplated putting money at stake upon the issue of games, is not denied. They had in view base-ball games, which are games in the strictest sense, and also horse-races. These last have often been held games within the meaning of the statute of Anne, when made for wagers. Goodburn v. Marley, Strange, 1159; Blaxton

v. Pye, 2 Wils. 809; Grace v. M'Elroy, 1 Allen, 563; Tatman v. Strader, 23 Ill. 493; Mosher v. Griffin, 51 Ill. 184; Ellis v. Beale, 18 Me. 337; Cheesum v. State, 8 Blackf. 332; Wilkinson v. Tousley, 16 Minn. 299; McLain v. Huffman, 30 Ark. 428. So have been dog fights; Eagerton v. Furzeman, I. C. & P. 613; and foot-races; Lynall v. Longbothom, 2 Wils. 36; and cock-fighting; King v. Howel, 3 Keb. 465; Squires v. Whisken, 3 Camp. 140; Bagley v. State, 1 Humph. 486; Johnson v. State, 4 Sneed, 614; Commonwealth v. Tilton, 8 Met. 232.

The legislature has no more power to exempt inclosures of fair and race-track associations from the operation of a general penal law than it would have to exempt Cook county. This statute so construed would be clearly unconstitutional. Daly v. State, 13 Lea (Tenn.) 223; Ex parte Westerfield, 55 Cal. 550; Zanone v. Mound City, 113 Ill. 552; Frorer v. People (Ill.), 31 N. E. Rep. 395; Millet v. People, 117 Ill. 294.

OPINION OF THE COURT, BY WATERMAN, J.

I can not agree to so much of the foregoing as expresses the opinion that the act of 1887, entitled " An act to prohibit book-making and pool-selling," is to be construed as repealing section 127 of the criminal code.

The Supreme Court of New York, under the constitution and laws of that State, may have been fully warranted in arriving at the conclusion it did. It does not appear that there existed in that State constitutional provisions, such as are a part of our fundamental law, and which must here be taken into consideration in determining the construction to be placed upon this statute.

The New York statute considered by the Supreme Court of that State contained, moreover, the following provision:

" Such racing and all pool-selling in this State shall be confined to the period between the fifteenth day of May and the fifteenth day of October, in each year, and all pool-selling shall be confined to the tracks where the races take place, and on the days when the races take place."

It is manifest that from such a statute the inference that "pool-selling" was, during the period named, made lawful, and prior legislation in respect thereto repealed, is much stronger than that which arises from inspection of the act now under consideration.

It is a well known rule of construction, that whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution, and give it the force of law, such construction will be adopted by the courts. Newland v. Marsh, 19 Ill. 376, 384; Dow v. Norris, 4 N. H. 16–18; People v. Supervisors of Orange, 17 N. Y. 235–241; Grenada Co. Supervisors v. Brogden, 112 U. S. 26.

Section 13 of article 4 of the constitution of this State is as follows: " No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title.

But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed, and no law shall be revived or amended by reference to its title only, but the law revived or the section amended shall be inserted at length in the new act."

It is not contended that either book-making or pool-selling are not gambling, and if it were, courts can not be ignorant of that which is the common knowledge of the community in which they sit. A building or yard used for the purpose of book-making or pool-selling is used for the purpose of gaming. People v. Weithoff, 61 Mich. 203.

If, therefore, the act of 1887 is, as is contended by appellants, to be construed as repealing section 127 of the criminal code, it is clear that the act in question, instead of prohibiting the keeping of book-making and pool-selling, or being an act for that purpose, was an act validating such acts when done within the inclosures of certain corporations and during certain periods; in other words, was an act permitting and making lawful by certain corporations at certain times and places, of that which theretofore had everywhere in this State, been, for more than seventy years, by express statute, unlawful and prohibited.

It has been well said as to the similar constitutional provision of New York in respect to special laws: "It was intended that the title of each bill should indicate the subject of its provisions so that neither legislators nor the public would be misled or deceived." People v. Briggs, 50 N. Y. 553–558; see also Indiana Cent. Ry. Co. v. Potts, 7 Ind. 681–685.

No person reading only the title of the act of 1887, would imagine that thereby, for the first time in the history of the State, was the keeping of a common gaming house made lawful.

The constitution of this State prohibits the " granting to any corporation, association or individual, any special or exclusive privilege, immunity or franchise whatever."

It is now contended that the act of 1887 confers upon certain corporations special privileges as well as immunity from the otherwise general penal laws of the State—immunity of very great pecuniary value, and privilege to do that which for all other persons is a crime.

The legislature has no power to exempt certain corporations from the effect of a general penal law; as well might it undertake to provide that persons of African descent should not be amenable to the laws concerning burglary, or that foreign-born citizens should be exempt from the penalties provided for keeping a dram-shop without a license therefor. Daly v. State, 13 Lea (Tenn.) 228; Ex parte Westerfield, 55 Cal. 550.

It is a fundamental principle of the law of all free and enlightened communities, that every one has a right to demand that he be governed by general rules. Millett v. The People, 117 Ill. 294–301; Zanone v. Mound City, 103 Ill. 552; Frorer v. The People, 31 North Eastern Rep. 395–397; People v. Gilson, 109 N. Y. 389–398.

To construe the act of 1887 as repealing, by implication, section 127 of the criminal code, is in effect to declare the act unconstitutional.

I am therefore of the opinion that the act of 1887 should not be so construed. By holding that section 127 is still in

force, we are relieved of any consideration of the constitutionality of the act of 1887.

If, as is urged by appellants, pool-selling is, within the inclosures of incorporated fair and horse track associations, made lawful during the time of their actual meetings, it would seem that not only section 127 of the criminal code, but section 12 of chapter 5, prohibiting gaming within two miles of the place where any agricultural, horticultural or mechanical fair is being held, is also by like implication repealed, as to which see The Town of Ottawa v. The County of La Salle, 12 Ill. 339, and Butz v. Kerr, 123 Ill. 659–662.

I am also of the opinion that the act of 1887 is not to be construed as a repealing statute, because repeals by implication are never favored. City of East St. Louis v. Maxwell, 99 Ill. 439, 443; Bruce v. Schuyler, 4 Gil. 221; Board of Supervisors v. Campbell, 42 Ill. 490; Hume v. Gossett, 43 Ill. 297; City of Chicago v. Quimby, 38 Ill. 274; Butz v. Kerr, 123 Ill. 659, 662; Gilbert v. County of Cook, 44 Ill. App. 69; Kern v. The People, 44 Ill. App. 181.

Appellant contends that by the act of 1887, new rights were given to incorporated fair or race track associations, during the actual time of the meeting of such associations, while the act itself distinctly declares that its provisions shall not apply to the actual inclosures of fair or race track associations during the actual time of the meeting of said associations.

It is only, if at all, by virtue of the provisions of the act of 1887, that section 127 of the criminal code is repealed; if, then, the provisions of that act do not at certain times apply to the inclosures of race track associations, it may well be argued that at those times, as to such inclosures, section 127 remains in force.

I am therefore of the opinion that the judgment of the Criminal Court should be affirmed.


OPINION BY SHEPARD, J.

The appellant was arrested upon a warrant issued by a justice of the peace upon a complaint alleging that certain

persons therein named, and divers other persons, whose names were unknown, " keep a common gaming-house in a building, booth, yard, garden, etc., by him or his agent used or occupied, and permits persons to frequent and come together to play for money or other valuable thing, or knowingly rent such place for such purpose," and upon trial was found guilty of a violation of section 137, chapter 38 of the Revised Statutes, and fined $100 and costs.

On appeal to the Criminal Court he was again found guilty and a fine of the same amount imposed against him.

The record shows that counsel for the people stated in response to an inquiry of the judge presiding on the trial in the Criminal Court, that the charge was for keeping a gaming house, or of permitting persons to come together for gaming under section 127 of the criminal code, and both sides, in their briefs in this court, recognize that it was under that section of the criminal code, which is the same as that mentioned in the complaint, the fine appealed from was inflicted. Section 127 is as follows :

" Whoever keeps a common gaming house, or in any building, booth, yard, garden, boat or float, by him or his agent used and occupied, procures or permits any persons to frequent or to come together to play for money or other valuable thing, at any game, or keeps or suffers to be kept any tables or other apparatus for the purpose of playing at any game or sport, for money or any other valuable thing, or knowingly rents any such place for such purposes, shall, upon conviction, for the first offense, be fined not less than $100, and for the second offense be fined not less than $500, and be confined in the county jail not less than six months, and for the third offense shall be fined not less than $500, and be imprisoned in the penitentiary not less than two years nor more than five years."

It was either admitted or proven that the appellant was the secretary of the Garfield Park Club, an Illinois corporation, formed to establish and maintain a driving park and race track, and to hold fairs, horse and fat stock shows, and other exhibitions; that said club occupied grounds in the

city of Chicago, upon which was laid out a mile race-track, and contained buildings, consisting of stables, sheds, a grand stand and various other structures, all being inclosed by a tight board fence some ten or twelve feet high; that horse races were run there; that book-making and pool-selling were conducted there in a space arranged for that purpose under the grand stand, and carried on by parties to whom the privilege was leased by the club; that this book-making and pool-selling was upon the result of horse-races run upon that particular track, and also upon the result of horse-races run elsewhere.

That horse-racing is a game, was decided in this State over thirty years ago. Tatman v. Strader, 23 Ill. 493.

The betting of money, or selling pools, or making books, upon the result of a horse race is gaming, because it is betting on a game, and unlawful and void, although the game in itself is not unlawful. Ibid.

A game which is not in itself unlawful, may be contested without its constituting gaming, but if money is staked upon it, it becomes gaming, and unlawful. Anderson's Law Dictionary, 484.

It is the risking of money between two or more persons, on a contest or chance where one must be the loser and the other the gainer, that constitutes gaming. Ibid; 2 Wharton's Crim. Law, Sec. 1465.

The keeping, therefore, of the room or space within the grand stand for the purpose of book-making or selling pools upon the result of the game of horse-racing, where, as was proven in this case, either the pool seller or the pool buyer gets the money and the other loses it, is, we think, keeping a common gaming house, within the meaning of the statute.

It may also be said that the keeping of a house or structure of any kind for gaming, being an indictable and punishable offense at common law, the keeping of a gaming house, like the one described in the complaint, for persons to frequent and game in, would be punishable under section 292 of the criminal code, in case section 127 had no place in our statutes, or did not cover the offense charged against

appellant. Therefore, if there were no other provisions of the statute covering the offense charged, we should be constrained to affirm the judgment of the Criminal Court; but counsel for appellant contend that if the offense charged against him were covered by section 127, the legislature, by the act of 1887, entitled "An act to prohibit book-making and pool-selling," legalized the selling of pools within the inclosure of the Garfield Park club, and therefore exonerated appellant from the charge against him.

The act of 1887 is as follows:

"Be it enacted by the People of the State of Illinois, represented in the General Assembly: Section 1. That any person who keeps any room, shed, tenement, tent, booth, or building, or any part thereof, or who occupies any place upon any public or private grounds within this State, with any book, instrument or device for the purpose of recording or registering bets or wagers, or of selling pools, or any person who records or registers bets or wagers, or sells pools upon the results of any trial or contest of skill, speed or power of endurance of man or beast, or upon the result of any political nomination, appointment or election; or being the owner, lessee or occupant of any room, shed, tenement, tent, booth, or building, or any part thereof, knowingly permits the same to be used or occupied for any of these purposes, or therein keeps, exhibits or employs any device or apparatus for the purpose of recording or registering such bets or wagers, or selling of such pools, or becomes the custodian or depository, for hire or privilege, of any money, property, or thing of value staked, wagered or pledged upon any such result, shall be punishable by imprisonment in the county jail for a period not longer than one year, or by a fine of not exceeding $2,000, or both. Provided, however, that the provisions of this act shall not apply to the actual inclosure of fair or race track associations that are incorporated under the laws of this State, during the actual time of the meetings of said associations, or within twenty-four hours before any such meetings."

Horse-racing in itself has never been regarded by the

English-speaking race as a vicious form of entertainment, but has usually ranked as a manly sport, in the legitimate pursuit of which much that is pleasurable and healthful can be enjoyed.

That it is liable to abuse may be conceded without detracting from its rank as a sport. The physical out-door sports and games between men, to which both England and America are accustomed, excite a kindred pleasure in both participants and spectators, and are almost equally liable to excess and abuse, and yet do not deserve to be suppressed.

In recognition both of the rank that the sport of horse-racing has in our national habits, and of its liability to abuse, the legislature might well, and we think manifestly did, intend by the act of 1887 to supersede all previous statutes, and the common law, so far as gaming on horse-races was affected thereby, and to make certain and definite what before might have rested only upon judicial construction; to affix increased penalties for a violation of law in respect to gaming on such races and to regulate such gaming by validating it when done within the terms of the proviso to this act. Brennan v. Brighton Park Racing Association, 56 Hun (N. Y.) 188.

Holding such to be the effect of the act of 1887, we are confronted by the question, raised by appellee, of the validity of that act.

The act on its face prohibits the conduct thereby made punishable by fine or imprisonment, or both, when done generally (as in pool-rooms remote from the races), but excludes from its operation such conduct when done within race-track inclosures during actual race meetings.

Counsel for appellee while contending against such an effect as we have given to the act of 1887, insist that if such effect shall be given to it, the act is unconstitutional, on the grounds:

1. That the title of the act embraces two subjects.

2. That one of the subjects, i. e., legalizing book-making and pool-selling within the inclosure of a race-track association, is not mentioned in the title.

3.  That it is contrary to the constitutional provision which prohibits the General Assembly from granting any special or exclusive immunity or franchise.

This court is without jurisdiction to decide upon the question of the validity or constitutionality of an act of the General Assembly.   Appellate Court Act, Sec. 8.

Such questions must go directly to the Supreme Court.

It is my opinion, therefore, that because the constitutionality of the act of 1887 is directly involved, the appeal should be dismissed for want of jurisdiction.

By Gary, P. J.

I agree that the argument of Judge Waterman would be conclusive, were it not that, reading between the lines of the act of 1887, the legislative intent is so clear that gambling at horse-races within the inclosures mentioned should be encouraged, that courts are bound to recognize it.

Neverthless, in form, I will concur with him in affirming the judgment.

The judgment will therefore be affirmed.