## The Chicago Fair Grounds Association v. People of the State of Illinois.

1. CORPORATIONS—*Exceeding their Powers—Election of Remedies by the Attorney-General.*—The attorney-general is not bound to proceed at law against a corporation by quo warranto proceedings to forfeit its charter. It may frequently better serve the public interests to restrain a corporation from exceeding its powers in an unlawful direction (as keeping a gaming house) than to punish it by penal remedies or to forfeit its charter, and the attorney-general may elect which course he will pursue.

2. INJUNCTION—*Lies to Restrain a Corporation from Doing Illegal Act and Acts Ultra Vires.*—An injunction lies in a suit on behalf of the people by the attorney-general to restrain a corporation from doing illegal acts and exceeding its powers in an unlawful direction.

3. SAME—*Power of the State.*—It is not enough to say that the criminal laws of the State furnish protection against the commission of criminal acts by a corporation. Indictments may lie, but the State has such an interest in the charters it grants to corporations as enables it, through the intervention of a court of equity, by its process of injunction to stop violations of law.

Injunction.—Interlocutory order. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed November 18, 1895.

## Statement of the Case.

On August 14, 1895, the attorney-general of the State, for and in the name of the people, filed an information in chancery against the appellant, wherein the court was given to understand and be informed that the appellant is a corporation organized under the laws of Illinois, on or about February 20, 1894, with a capital stock of $300,000; that the object of said corporation as set forth in its articles of incorporation, is " to establish and maintain a driving park and race track, where running, trotting and other meetings may be held, to develop the speed and endurance of thoroughbred horses, and to hold fairs, horse shows, fat stock exhibitions and entertainments of all kinds at such driving park."

That shortly after its incorporation, the association secured by lease or otherwise, the possession and control of certain land situate in said Cook county, at or near a place called Harlem, in said county, and thereon caused to be constructed a racing track, together with stables, sheds and a building commonly called a grand stand, and immediately adjacent thereto a large number of what are commonly known as betting booths, under a common roof or shed, open at all sides, all of which sheds, buildings and booths and racing tracks, were and are inclosed in a close fence, which entirely surrounds said grounds, and prevents entry upon the premises except at the place opened by said association for the admission of persons at or near the grand stand and betting booths; that to facilitate the transportation of its patrons it has caused railway tracks to be extended into its grounds, and trains to be run thereto during the time races are conducted.

That after the completion of its race track and buildings, the association entered upon the business of conducting and managing the racing of horses, and to that end offered prizes and premiums on races, solicited entries for horses therefor, and otherwise invited the general public to attend the same; that the association has at all times during the races conducted by it, permitted and allowed within its grounds and

buildings, the making of bets upon the races conducted and run under its management, and has generally, during the time of such races, permitted the making of bets and wagers upon horse races run elsewhere, and has licensed or otherwise knowingly and intentionally given and permitted, for a consideration, the privilege to book-makers to engage in the business within its inclosure of receiving and making bets and wagers upon all such races; and has rented and leased to such book-makers, its booths for said privilege and purpose for the consideration of $100 a day for each booth; and that the association has, by its agents, engaged in the business of book-making, and receiving and laying bets and wagers; that the association, its officers and agents, are now engaged in said business of renting and leasing said booths and other portions of its business and premises for book-making and betting purposes; and is now, by its officers and agents, engaged in the business of receiving and laying bets and wagers; that the association ordinarily runs at least five races a day, and intends on giving races on each week during each alternate two weeks until November 1, 1895; that the association furnishes prizes for such races; that the prizes amount to $1,000 a day and upward; that said race meetings are generally attended by 1,000 persons and upward; that by reason of the acts of the association and its officers, a large number of persons are brought together within its grounds, and are solicited and invited by the agents and licensees of the corporation and by other persons, with its permission, to engage in laying wagers and bets upon horse races, and that within its inclosure many portions thereof are daily used by a large number of book-makers in their business, who, by their license and permission of the corporation and its officers openly exhibit the " odds " or " rates " at which they, the book-makers, are ready to lay bets and wagers; that a large number of bets and wagers are being daily made by such book-makers, and by the officers and agents of the corporation within its grounds; that during the races the places set apart for the purpose of gaming are visited by hundreds of persons for the purpose of betting, and

who do in fact lay bets and wagers with book-makers and other licensees and agents of the corporation, and with other persons permitted to be within the grounds for betting purposes; that betting and gaming is openly and notoriously daily carried on, on the premises of the corporation by its procurement and permission, and under the direction of its officers; that the maintenance of such betting arrangements and the business of gaming is now the principal business of the corporation, and the principal source of its income, and that its profit is the chief return the corporation secures for its outlay.

And said attorney-general charges that all these acts and doings of the corporation, its officers, licensees and agents, are wholly without any corporate right or authority whatsoever possessed by it, and wholly in excess and violation of such authority.

And said attorney-general further gives the court to understand and be informed that by reason of the premises, said association, its officers, agents, etc., are guilty of keeping a common gaming house, and within its buildings and grounds procures or permits persons to come together to play for money or other valuable things, at games, and therein keeps, or suffers to be kept, tables and other apparatus for the purpose of playing at games of sport for money or other valuable thing; and does knowingly rent within its grounds, places to be occupied by others with tables and other apparatus for the purpose of playing games for money, etc., and where persons are procured or permitted to come together to play for money, contrary to the form of the statute, etc.; that by reason of the premises, said corporation is guilty of maintaining a common nuisance to the public, and to the great injury and damage of the people; and that said corporation will continue to maintain a common gaming house, and to do and permit to be done within its grounds the several acts and doings aforesaid, to the continuing great damage and common nuisance to the public, unless it and its officers, etc., be restrained, etc.

The said attorney-general further informs the court that

by reason of the wrongful acts aforesaid, now daily being done, the rights of the people will be further greatly damaged unless a temporary injunction issue without notice.

The prayer is that the association may answer, but not under oath, etc.; and that it, its officers, agents and employes may be perpetually enjoined and restrained from the laying of bets and wagers upon horse races, and the making of books, so called, thereon, within any of the buildings, or upon any part of the premises owned or controlled by said corporation, its officers or agents; and from renting or leasing any part of its premises for such purposes, and from licensing or in any way permitting its premises to be used for such purposes, and from granting any right or privilege to any person or persons whatsoever, the right or privilege to make books, or receive or lay wagers, within or upon any part of the building or grounds of said corporation, on horse races; and from procuring, suffering or permitting persons to come together within its said premises, or any part thereof, for the purpose of playing at games of sport for money or valuable thing, and for a writ of injunction accordingly.

On the same day that the information was filed a temporary injunction was ordered, and the writ issued.

On the next day, August 15th, the appellant association entered its special appearance by solicitor, and moved the court to dissolve the injunction, and dismiss the information for want of jurisdiction; and acting upon that motion the court continued its hearing until the following Monday, and suspended the injunction until further ordered.

Thereafterward, on August 24th, the appellant, still preserving its special appearance for that purpose only, moved the court to quash said writ of injunction, and dismiss the information, which was overruled, and it was ordered that the writ be continued in full force until further ordered.

From both the order of August 14th, granting the interlocutory injunction, and that of August 24th, overruling the motion to quash the writ, the defendant association appealed, and by stipulation of counsel both appeals are to be considered upon one and the same record.

Richard Prendergast and J. E. Deakin, attorneys for appellant, contended that a court of equity has no jurisdiction to restrain the commission of crime, nor to enforce moral obligations, and the performance of moral duties as such; nor will it interfere with the performance of any illegal act, merely because it is illegal, in the absence of any injury to property rights. High on Injunctions, Sec. 20 *et seq.*; Beach on Injunctions, Sec. 1044 *et seq.*; Cope v. District Fair Assoc'n, 99 Ill. 489; The Debs Case, 15 Sup. Ct. Rep. 900; Att'y-Gen. v. Utica Ins. Co., 2 Johns. Ch. (N. Y.) 371; State v. Crawford, 28 Kan. 726; Verplank v. Mer. Ins. Co., 1 Ed. 84; Att'y-Gen. v. Bank of Niagara, Hopk. 403; Att'y-Gen. v. Tudor Ice Co., 104 Mass. 239.

In the absence of probability of irreparable mischief being done by a short delay, or unless facts showing clearly the existence of a public nuisance iujurious to property rights are admitted, a court of equity will not, even on the application of the attorney-general, grant an injunction until the question of nuisance or no nuisance has been submitted to a jury. 2 Story's Eq. Jur. (13th Ed.), Secs. 921–924a; Atty-Gen. v. Cleaver, 18 Ves. 211; Same v. United Tel. Co., 31 L. J. Ch. 329; Same v. Heislon, 18 N. J. Eq. 412; Same v. Brown, 54 N. J. Eq. 91; Dunning v. Aurora, 40 Ill. 485; Lake View v. Letz, 44 Ill. 81; Wagle v. Reinbach, 76 Ill. 322; Oswald v. Wolf, 129 Ill. 209; C. & E. I. R. Co. v. Loeb, 118 Ill. 203; Nelson v. Mulligan, 151 Ill. 466.

George Hunt and John S. Stevens, attorneys for appellees, contended that one of the grounds upon which the injunction was asked is that the acts complained of constitute a public nuisance, and that they can be restrained at the suit of the attorney-general.

The keeping of a common gaming house is indictable at common law on account of its tendency to bring together disorderly persons, to promote immorality and to lead to breaches of the peace.

A house where a faro-table is kept for the purpose of common gambling. is, *per se*, a nuisance, etc. 2 Whar. Crim. Law, Secs. 2446–7.

The facts stated in the information are much the same as those contained in the statement of Swigart case, 154 Ill. 286.

In that was held: (1) That book-making and pool-selling are betting; p. 288. (2) That the facts in that case showed the keeping of a common gaming house within the meaning of the statute; p. 294. (3) That at common law, gambling became a nuisance when accompanied by incidents tending to the discomfort, disorder or demoralization of society, and that the drawing together of large numbers of persons, as therein stated, was demoralizing; p. 296. Swigart v. People, 154 Ill. 284.

A ten-pin alley kept for gain is a nuisance at common law; and it is so, although printed rules were posted forbidding minors, and stating "No betting allowed." Tanner v. Trustees, etc., 5 Hill 121.

A public nuisance must be something which subjects the public to some degree of inconvenience or annoyance. 16 Am. & Eng. Ency. 969.

A public resort for betting, betting having been prohibited by statute, is a nuisance *per se.* McLean v. State, 49 N. J. L. 471; Meyer v. State, 42 Id. 145; McLaughlin v. State, 45 Ind. 338; Com. v. McDonough, 13 Allen (Mass.) 581; People v. Cutlow, 28 Hun (N. Y.) 465; Smith v. Com., 6 B. Mon. (Ky.) 21.

The remedies for purprestures and public nuisances are by indictment, by proceedings at law known as an information for intrusion, resulting in abatement; and also by proceedings in equity for abatement, and injunction on information by the attorney-general. 16 Am. & Eng. Encyc., p. 940, and cases cited.

In this State the attorney-general has the power to institute proceedings by information in chancery to restrain public nuisances. Hunt v. C., H. & D. Ry. Co., 20 Ill. App. 283; 121 Ill. 638.

Besides the remedy at law, it is now settled that a court of equity may take jurisdiction in cases of public nuisance by an information filed by the attorney-general. The juris-

diction has been fully sustained upon the principle that equity can give more adequate and complete relief than can be obtained at law. Georgetown v. Alexandria, 12 Pet. 93; Met. City Ry. Co. v. Chicago, 96 Ill. 637.

A court of chancery may grant preventive as well as remedial relief, and this may be done where the act threatened would be punishable under the criminal laws of the State as a nuisance. People v. St. Louis, 5 Gilm. 351.

Many cases might be produced in which the court has interfered to prevent nuisances to public rivers and harbors; and the court of exchequer as well as this court, acting as a court of equity, has a well established jurisdiction upon a proceeding by way of information to prevent nuisances to public harbors and public roads, and in short, to prevent public nuisances. Att'y Gen'l v. Forbes, 2 Mylne & C., 123, cited in Met. City Ry. v. Chicago, 96 Ill. 623.

A court of equity will not only interfere upon the information of the attorney-general, but also upon the application of private parties directly affected by the nuisance. 2 Story Eq., Secs. 922–23.

The fact that the commission of the threatened act which it is sought to enjoin as a nuisance, may be punished criminally as such, will not prevent the exercise of the restraining power of equity. 1 High on Inj., Sec. 745, and cases cited.

In proceedings by attorney-general to enjoin public nuisance by the pollution of a river, it is unnecessary for him to show any actual injury, the statute having prohibited the act complained of. 1 High, Inj., Sec. 764.

"A court of equity has jurisdiction to restrain existing or threatened public nuisances by injunction, at the suit of the attorney-general in England, and at the suit of the State, or the people, or municipality, or some proper officer representing the commonwealth in this country." Pomeroy, Eq. Jur., Sec. 1349.

Mr. Justice Shepard delivered the opinion of the Court.

Disregarding all technical questions brought to our notice,

it remains to be determined whether a court of equity has jurisdiction to grant relief by way of injunction in cases like that presented by the information here. The objects for which the appellant corporation was organized, as set forth in its articles of incorporation, were proper and lawful. The injunction in no manner interferes with the attainment of such objects in a lawful manner. It is only directed against the doing of acts *ultra vires*, which tend to public injury, are opposed to public policy, and are unlawful.

What is forbidden by the injunction is "the laying of bets on horse races, and the making of books thereon within any of the buildings, or upon any part of the premises possessed, owned or controlled by the Chicago Fair Grounds Association whether such races are run on its premises or elsewhere; from renting or leasing any part of the premises of said corporation to be used for book-making or gaming of any kind; from permitting, licensing or allowing any person or persons to make books or receive or lay wagers within any part of the grounds of said Chicago Fair Grounds Association, on horse races, and from procuring, permitting or suffering persons to come together within its said grounds and premises for the purpose of playing at games or sport for money or other valuable thing."

That everything there forbidden is opposed to public policy, to the public injury and unlawful, can not be denied. Swigart v. The People, 50 Ill. App. 181; same case, 154 Ill. 284.

And that it is against the doing of those acts that are *ultra vires*, to the public injury, and unlawful, and none others, that the information is directed, is apparent from the allegations of the information shown in the statement of facts.

The attorney-general was not bound to proceed at law, if at all, against the appellant, by quo warranto proceedings to forfeit its charter. It may frequently better serve the public interest to restrain a corporation from exceeding its powers in an unlawful direction, than to punish it by penal remedies, or to forfeit its charter, and the attorney-general

may elect which course he will take. Attorney-General v. Railroad Co., 35 Wis. 425.

Nor is it enough to say that the criminal laws of the State furnish protection against the commission of the unlawful acts informed against. It doubtless is true that indictments therefor would lie, but the State has also such an interest in the charters it grants to corporations as enables it, through the intervention of a court of equity, by its proc. ess of injunction, to stop a further continuance of violations of law, to the detriment of the public, by corporations acting as its agents.

"It comes with an ill grace from a corporation to aver that because the abuse of its corporate privileges consists in committing crime, civil remedies are unavailing." Columbian Athletic Club v. The State ex rel. (Indiana Sup. Ct.), 40 N. E. Rep. 914.

We might well rest content with a reference to the last cited case, as deciding all the principal questions raised upon this record.

For all present purposes the facts set forth in the information stand as if admitted, and we are clear that they constitute complete grounds for the equitable relief that was granted.

The orders appealed from are therefore affirmed.