## STATE OF GEORGIA *v.* PAXSON & CANNON.

1. " The State can only be estopped from asserting her right to her own property by legislative enactment or resolution."
2. Prescription does not in any case run against the State.
3. The State in her sovereign capacity may bring an application for an injunction under the timber-cutters act embraced in the Civil Code, § 4927, by attaching to the petition as an abstract of title a statement setting forth that the land in controversy has never been granted, and that the title thereto is still in the State in her sovereign capacity. COBB, J., dissenting.
4. (Per COBB, J.) The attorney-general may bring an equitable action in the name of the State, in the nature of the common-law proceeding by information of intrusion, for the recovery of land title to which is in the State, and in aid of such action obtain an injunction to restrain a trespass upon the land, without reference to whether the alleged trespasser is insolvent, or whether the damages resulting from the trespass are irreparable.
5. (Per COBB, J.) The petition in the present case can be properly construed as an action of the character indicated in the preceding note.

Argued February 18, — Decided March 7, 1904.

Petition for injunction. Before Judge Parker. Coffee superior court. December 9, 1903.

*John C. Hart, attorney-general, J. W. Haygood, B. B. Cheney,* and *Eldridge Cutts,* for plaintiff.

*Lankford & Dickerson* and *Dart & Roan,* for defendants.

COBB, J. 1, 2. The State caused a part of her public domain to be surveyed into lots, and provided for the issuance of grants to all of such lots except those bearing given numbers, such as 10 and 100; the lots bearing these numbers being reserved for school purposes. The lot in controversy is one of the lots reserved, numbered 100. No grant has ever issued for this lot. The title to the same is still in the State, unless such title was divested at a tax sale had under an execution issued by the comptroller-general for taxes against the lot as wild land. This execution was issued under the authority of the general laws, of force at the time of its issuance, in reference to the collection of taxes due by owners of wild land. The State, of course, owed no taxes to itself on its own property, and the comptroller-general was without authority to seize such property on an execution so issued. There is, hence, little difficulty in determining the question that as a matter of law the sale was void. It is claimed, though, that as the sale was had by a public officer under authority of a process issued by another public officer, as the purchaser at the sale paid the amount of his bid, which, after deducting the expenses, was covered into the treasury of the State and dealt with as the State's money, and as the original purchaser and those claiming under him have regularly returned the property for taxation each year and paid the taxes due thereon, which have likewise been dealt with as the State's property, the State is estopped from asserting her title against the present occupants of the land, who claim under the purchaser at the tax sale. It is not pretended that the tax sale was had under the authority of any act or resolution of the General Assembly authorizing in express terms the sale of the lot in question or of the class of lots to which that lot belongs. "As a question of law, the State is not bound nor estopped from asserting her rights to her own property, unless it be done in her sovereign capacity by a legislative enactment or resolution." *Alexander* v. *State,* 56 *Ga.* 479 (7), 486. Nothing done by the comptroller-general or the sheriff, or the tax officers of the county, or the treasurer of the State, in reference to the fund which went into the State treasury derived from the sale of the land or that derived from the taxes collected from year to year, would have the effect of estopping the State; no one of its public officers having

acted within the scope of his authority when he dealt with the property or the fund.      See, in this connection, Pol. Code, § 268; *Penitentiary Co.* v. *Gordon,* 85 *Ga.* 171.      If it had been shown that the General Assembly had by resolution expressly ratified the unauthorized acts of these officers, and specially appropriated the money in the treasury, a different question would arise.      The mere fact that under the usual appropriation acts the money in the treasury has been paid out by the treasurer would not any more estop the State than would the unauthorized acts of the other officers in reference to the sale of the property and the collection of the taxes.      It necessarily follows from all this that it was not incumbent on the State to tender back to the defendants either the balance of the purchase-price of the land which was covered into the treasury, or the amount of taxes which had been collected from year to year since the sale.      The State, then, is the sole owner of the property, not having lost its right to assert its title by the sale or by anything done since the sale and resulting therefrom.      Nor is its title lost by the long-continued possession of those claiming under the tax sale; it being settled that prescription does not in any case run against the State.      *Norrell* v. *Augusta Railway Co.,* 116 *Ga.* 313, and cit.

3. The State attached to her petition what is described as an abstract of title, which is as follows: " Title in the State of Georgia, as sovereign owner of the soil, no grant ever having been issued from the State."      The majority of the court are of the opinion that the petition can be maintained under the timber-cutters act embraced in the Civil Code, § 4927.      They hold that as every abstract of title required by that act would begin with a grant from the State, the mere statement by the State that no grant has ever been issued constitutes a sufficient requirement with the terms of that act.      They further hold that the principle of the former decisions of this court, ruling that a private citizen must, to bring himself within the terms of that statute, attach to his petition a perfect paper title capable of being recorded (see *Wilcox Lumber Co.* v. *Bullock,* 109 *Ga.* 532; *Wiggins* v. *Middleton,* 117 *Ga.* 162, and cit.), is not applicable in this case, that the State was not a party in any of those cases, and that the principle announced in them will not be extended to the State.      I am unable to take this view of the matter.      I think those decisions are con-

trolling, and that the petition can not be sustained under the timber-cutters act referred to. When the State proceeds as a sovereign to assert its rights, it can bring to bear all the prerogatives incident to sovereignty. But when the State, in its corporate capacity, seeks to avail itself of a remedy common to all citizens, it stands in no better position than the citizen and is entitled to no greater rights. It can use that remedy only upon the terms which are imposed upon the citizen. See the well-considered case of State v. Lord, 28 Or. 498 (3), 510. I dissent, therefore, from the proposition announced in the third headnote, and concur in the judgment of reversal only for the reason that in my opinion the petition is maintainable on another theory, which will be stated.

4, 5. At common law the king could not bring an action of ejectment, or trespass to try title, against an occupant of crown lands; these actions being founded upon disseisin, and it not being possible, theoretically, to oust the king. The remedy of the king was by information, called an information of intrusion. See 8 Bacon's Abr. 101, 96 ; 2 Bl. 261. This information was exhibited in the name of the king's attorney-general. Attorney-General v. Allgood, Parker, 1; 2 Story's Eq. Jur. (13th ed.), § 922. This rule of the common law has been followed by South Carolina (State v. Arledge, 1 Bail. 551 ; State v. Stark, 3 Brev. 101), and recognized in New York and Massachusetts (see the opinion by Chancellor Kent in Miller v. Winslow, 2 Johns. 82 ; Cutts v. Com., 2 Mass. 284). See also 3 Wash. Real Prop. (6th ed.) .§ 2021. The Supreme Court of Colorado held, however, that disseisin was not necessary to the maintenance of the code action of that State substituted for ejectment, and that the State might proceed under the statute. Brown v. State, 5 Colo. 496. It is not necessary in this case to express any definite opinion as to whether the State might maintain the statutory action for the recovery of real property. I am clearly of opinion, however (and this is, of course, said for myself alone), that the State may maintain an action similar to the common-law information of intrusion, and that it may, in aid of such an action, obtain an injunction against a trespasser on its lands. It has been held in numerous cases, both in England and in this country, that the attorney-general may apply to a court of equity to abate a public nuisance by injunction. 10 Enc. P. & P. 902 ; 2 Story's Eq. Jur. (13th ed.)

§ 922; Attorney-General v. Richards, 2 Anstr. 603; In re Debs, 158 U. S. 587; Lofton v. Collins, 117 Ga. 434. Even if a trespass upon public lands can not be properly considered a public nuisance, the same principles which would authorize the attorney-general, or other State officer, to file an application in the name of the State for the purpose of enjoining a public nuisance would authorize an application to restrain a trespass upon public land. In each case the interest of the entire public is involved and will be subserved by the decree rendered. Under our system of pleading and practice, where we pay little attention to form and dig deep for substance, I think the present application can be properly construed as in its nature and essence an application by the attorney-general, in the nature of an information of intrusion, with a prayer for an injunction in aid thereof; and so construed, the judge should, in my opinion, have granted the injunction. For these reasons I concur in the judgment of reversal.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent, and Fish, P. J., disqualified.*