STATE ex rel. KING, Atty. Gen., v. H. F. WILCOX OIL & GAS CO. et al.

No. 23966.  Opinion Filed Jan. 31, 1933.

Rehearing Denied March 7, 1933.

J. Berry King, Atty. Gen., Jesse L. Ballard, Asst. Atty. Gen., E. S. Ratliff, and Hayes, Richardson, Shartel, Gilliland & Jordan, for plaintiff in error.

Armstrong & Murphy, for defendants in error.

RILEY, C. J.  This action was for injunctive relief to restrain the defendants from violating, by producing oil and gas in excess of the amount allowable, what is commonly known as the Proration

Law of the state, and the orders, rules, and regulations of the Corporation Commission made thereunder.

The action was instituted by the Attorney General under direction of the Governor.

A temporary restraining order was issued and dissolved. The petition was amended, and upon demurrer of defendants the trial court held itself to be without jurisdiction of the subject-matter. The allegations of the petition are taken as true. The defendants are operators for oil and gas in the Oklahoma City field; their wells produce from a common reservoir or source of supply and deplete the common gas pressure of the field. The potential production of the field is in excess of 3,000,000 barrels per day. The market demand therefor is approximately 100,000 barrels per day. In order to prevent economic waste and to provide for an equitable taking, the Corporation Commission did, on December 30, 1930, promulgate basic order No. 5414, and provide other rules and regulations, all of which orders, rules, and regulations are attached to the petition. Under these, defendants were entitled to take from their said wells during October, 1931, 74,755 barrels; November, 93,884 barrels; December, 100,874 barrels; January, 1932, 51,673 barrels; February, 16,659 barrels; March, 20,064 barrels; total for the period, 360,909 barrels of oil. But defendants produced from said field during October, 1931, 97,853 barrels; November, 352,278 barrels; December, 258,401 barrels; January, 1932, 316,126 barrels; February, 178,260 barrels; total for said period, 1,- 202,918 barrels. The amount taken in March and April, 1932, is unknown, but believed to be in excess of the amount allowed by the Commission's orders.

Defendants have stated that they will not obey the orders, rules, and regulations of the Commission or comply with the statutes, and they are now violating and will continue to violate said orders, and thereby commit waste.

The Commission's order No. 5414, supra, requires (sec. 1, par. 4) each operator to furnish the Commission verified daily reports on forms prescribed showing the amount of production, and prohibits the opening of a well after the daily report is due and unfiled. Defendants since April 7, 1932, have violated said order by failing and refusing to report as required.

Violation of the order is also predicated upon failure to truly report transportation of oil and by the filing of false reports.

The designated umpire appointed by the Corporation Commission, whose duty it is to go upon the leases of defendant for inspection purposes, has been denied access and entry upon the leases of defendants.

The state of Oklahoma owns 640 acres of land in said field, which land is leased for oil and gas purposes; thereon are located about 32 producing oil wells; therein the state has a proprietary interest in the royalty. The defendant's excessive taking of oil from its wells results in drainage and loss to the state interest by an exhaustion of the common gas pressure and resultant diminution of the oil recoverable by the state from its said property. A failure to report or account for gross production tax to the state for oil taken by defendants is pleaded.

A multiplicity of suits impending on the part of other producers and royalty owners, whose rights are disregarded by defendants, is pleaded. It is stated that defendant's acts and conduct constitute a public nuisance in that the same injuriously affects the public interest, depreciates and destroys the value of other persons' property, and renders insecure the use thereof. It is pleaded that defendants' acts and conduct are against public policy and that no other lawful method exists by which the injuries stated can be prevented. Plaintiff has no adequate remedy at law.

It is contended on appeal that the trial court erred in sustaining defendants' demurrer to plaintiff's amended petition, and in dismissing the action.

The demurrer, for the purposes thereof, admits all allegations therein contained. Adams v. Couch, 1 Okla. 17, 26 P. 1009; Myers v. Harness, 116 Okla. 268, 244 P. 1109.

So treating the demurrer, the question presented is: Did the court have jurisdiction to enjoin defendants from the commission of the acts stated and the resultant irreparable injury and damage to public and private rights involved?

It is observed that the state sued in a dual capacity, (a) in its governmental capacity to uphold its sovereign dignity and authority so as to prevent a flouting of its laws, the maintenance of a public nuisance, the infliction of permanent injury and damage upon a large body of its citizens and the consequent impairment of its revenues, and (b) in its proprietary capacity, as owner of a section of land wherein it was entitled to an unimpaired royalty interest.

Doubtless had the Legislature conferred no power upon the Corporation Commission

concerning proration of oil. there would have been no question of the trial court's jurisdiction. for article 7, section 10, of the Constitution provides:

"The district court shall have original jurisdiction in all cases. civil and criminal. except where exclusive jurisdiction is, by Constitution or by law, conferred on some other court. * * * The district courts * * * shall have power to issue writs of * * * injunction."

Had the Legislature. in addition to its enactment of sections 7954 to 7963, C. O. S. 1921 [O. S. 1931. secs. 11565-11574] also enacted the orders which the Corporation Commission promulgated pursuant to the statute, there would be no question of the trial court's jurisdiction of the subject-matter.

Doubtless the trial court was of the opinion that the statutes conferred on the Commission certain exclusive powers. judicial in character. in connection with the proration of oil and gas.

We are of the opinion that the legislative character of the power so conferred upon the Commission is exclusive. This is a rule-making power: it is in this connection expressly delegated to the Corporation Commission. Being legislative in character, it could not be conferred upon the courts. In re County Commissioners, 22 Okla. 435, 98 P. 557; Pioneer T. & T. Co. v. Bartlesville, 40 Okla. 583, 139 P. 694; Reagan v. Farmer's L. & T. Co.. 154 U. S. 362; Prentis v. Atl. Coast Line Co., 211 U. S. 210.

These conferred powers. legislative in character. when exercised by the promulgation of rules, regulations, and orders, have the force and effect of statutory law of the state. They are rules of action which those governed thereby must obey. Grand Trunk R. Co. v. R. R. Commission, 221 U. S. 400.

"The order is a legislative act by an instrumentality of the state exercising delegated authority. * * * is of the same force as if made by the Legislature, and so is a law of the state."

Section 7956. C. O. S. 1921 [O. S. 1931, sec. 11567] provides:

"The Corporation Commission shall have authority to make rules and regulations for the prevention of such waste."

Section 7957, C. O. S. 1921 [O. S. 1931, sec. 11568] provides, in part:

"The Corporation Commission is authorized to so regulate the taking of crude oil or petroleum from any or all such common sources of supply within the state of Oklahoma. as to prevent the inequitable or unfair taking from a common source of supply, of such crude oil or petroleum by any person, firm or corporation."

And provision is made by section 7958, C. O. S. 1921, authorizing the Corporation Commission to prescribe rules and regulations for the gauging of each well and "to make and promulgate, by proper order, such other rules and regulations, and to employ or appoint such agents, with the consent of the Governor, as may be necessary to enforce this act."

The only judicial character of power sought to be conferred by the act upon the Corporation Commission is that contained in the following words:

"To summon witnesses. make ancillary orders and use mesne and final process, including inspection and punishment as for contempt. analogous to proceedings under its control over public corporations, as now provided by law." Section 7959.

Many of these powers are commonly exercised by legislative bodies; i. e., they summon witnesses. they punish for contempt. Such bodies also issue process. However, there is some character of judicial power sought to be conferred upon the Commission by the words, notably that of making ancillary orders, and issuing final process, i. e., applying the general rule by it made to the individual, person, firm, or corporation, and enforcing or attempting to enforce the same by contempt proceedings, inclusive of a fine.

The validity of sections 7954-7960, inclusive, C. O. S. 1921 [O. S. 1931, sec. 11565-11574] was sustained by this court in Julian Oil & Royalties Co. v. Capshaw, 145 Okla. 237, 292 P. 841, the writer hereof dissenting, and by the Supreme Court of the United States in Champlin Oil & Refg. Co. v. Corporation Commission, 52 Sup. Ct. Rep. 559. Those acts, in this regard, constitute the public policy of this state, which policy imposes a restriction and limitation upon the right to produce oil and gas under circumstances stated in the act, i. e., when production from a common source of supply without such restriction and limitation would constitute waste of said natural resources.

If within the scope of its authority, the validity of the orders of the Corporation Commission so made should be assumed in this character of action. That assumption is binding alike upon the district court and this court, for we said, regarding the orders of the Commission in Julian v. Capshaw, supra: "The reasonableness of same cannot be inquired into in this character of attack." The question. therefore, is reduced to the

proposition of whether the judicial power conferred upon the Corporation Commission to impose a fine of $500 in contempt, for violation of the act (even assuming its constitutionality) and to promulgate ancillary orders and issue mesne final process, exhausts the judicial power on the subject. And does the investiture of this specific power, judicial in character, constitute an exclusion and denial of other remedy, otherwise available in a court of equity?

The act not only declares the public policy, but also it creates and diminishes private rights and enjoins public duties upon some and casts obligations upon others. If the Commission's power is not sufficient to secure the protection of these rights and the performance of the duties and obligations, will the state and the citizens so concerned remain remediless? Will the general equitable powers of a district court to afford such relief be considered as obstructed, denied, abandoned, or substituted by a specific and minute grant of power to the Corporation Commission to assess a limited fine for contempt? It is to be noted that the provisions of the act for receivership were stricken down by the Supreme Court of the United States because the basis of such receivership was upon violation of the act rather than orders of the Commission, and because of that fact it was indefinite and uncertain as to when the basis existed. Likewise the contempt provision of the act is based upon violation of the statute rather than the Commission's orders, and this provision may be subject to the same rule. So that in finality there is very little power of enforcement, judicial in character, left to be exercised by the Commission.

This act does not profess to make the power, judicial in character, conferred upon the Commission, the exclusive remedy for its enforcement of its acts, for by section 7961, C. O. S. 1921 [O. S. 1931, sec. 11572] it is provided that in addition to any penalty that might be imposed by the Commission for contempt, any person, firm, or corporation violating the provisions of the act would be guilty of a misdemeanor and upon conviction thereof in a court of competent jurisdiction, should be punished by a fine or imprisonment.

Section 7962, C. O. S. 1921 [O. S. 1931, sec. 11573] is the receivership section, now stricken down, but providing that a court of competent jurisdiction might appoint a receiver for the property of a person or corporation violating the act. These sections evidence the intention not to confer exclusive jurisdiction for enforcement of the act upon the Corporation Commission.

Now, if the subject-matter be one over which courts of equity have jurisdiction, the mere fact that a court of law may also be given jurisdiction does not oust that of equity, especially where the legal remedy is not adequate. Griesa v. N. Y. Mut. L. Ins. Co., 169 Fed. 509, 215 U. S. 600; Peck v. Braman (Ind.) 1 Blackf. 544; Powell v. Pennock, 18 Mich. 588, 148 N. W. 430; Berry v. Robinson, 9 Mo. 276; Bradshaw v. Milliken, 173 N. C. 432, 92 S. E. 161; Hartford Life Ass'n v. Hopkins, 97 Va. 167, 33 S. E. 539; Hull v. Watts, 95 Va. 10, 27 S. E. 829; Peters v. Rhodes, 157 Ala. 25, 47 So. 183; Homrich v. Robinson, 221 Mass, 308, 108 N. E. 1082; Tackett v. Vogler, 85 Mo. 480; Fidelity Trust Co. v. Gill Car Co., 25 Fed. 737; Fitzgerald v. Urton, 4 Cal. 235.

The general jurisdiction of a court of equity over a particular subject is not destroyed by also conferring jurisdiction of the subject upon some other tribunal, unless the statute so doing expressly or by clear implication makes the latter exclusive.

In the act before us there is nothing indicating intention to withhold from the courts of general jursdiction the power to protect and enforce rights therein created. Moreover, the indication is to the contrary.

Section 7962, C. O. S. 1921 [O. S. 1931, sec. 11573] providing for receivership, and stricken down as aforesaid, was said by the Supreme Court of the United States to be "not a measure in the nature of, or in aid of remedy by, injunction to prevent further violations." It was a penalty and so said to be by the act.

It is our view that injunctive relief exists without special provision therefor by legislative act, and that the district courts have jurisdiction to apply such relief in proper cases for the enforcement of rights, public and private, existing under and by virtue of the Proration Laws of Oklahoma.

These are property rights, for community interests under certain circumstances are by the act vested.

Section 7957, C. O. S. 1921 [O. S. 1931, sec. 11568] predicating this circumstance upon conditions of waste, limits any person, firm, or corporation having the right to drill into and produce oil from any common source of supply to a taking of only such proportion of oil as the production of the well of such person bears to the total production of such common source of supply.

This sustained act, under the enumerated circumstances, ended the right of a producer to take excessively. It provided a ratable taking under these circumstances. It recog-

nized a community property right in oil coming from a common source under these circumstances. It forbade infringement of that right. Ohio Oil Co. v. Indiana, 177 U. S. 190.

In Oxford Oil Co. v. Atl. Oil Co., 22 Fed. (2nd) 597, it was held to be within the power of the Legislature to lay down a general rule for the protection of mineral rights of the adjoining landowners and leave the details of enforcing that rule to an administrative agency or board.

The whole enactment presupposes property rights in individuals capable of injury. Equity has power to protect those rights even though specific violations of the act be punishable as a misdemeanor or as a contempt, for payment of a fine, small in amount, is not adequate to prevent any injury and damage vast in amount to an adjoining property owner whose oil may be drained by the illegal and wrongful acts of another.

The state has a governmental interest in the enforcement of its laws and in the execution of its public policy. It is the state's duty to protect its citizens by a preservation of their property rights. In the exercise of this duty it may sue in its courts to enjoin unlawful continuous acts, or acts which inflict permanent and irreparable injury upon its citizens. Upon this basis the state may sue to enjoin or abate a public nuisance. U. S. v. Milwaukee Ref. Transit Co., 145 Fed. 1007; Chicago Fair Grounds Ass'n v. People, 60 Ill. App. 488; N. A. Ins. Co. v. Yates, 116 Ill. App. 217.

The state brought the action in State v. Ohio Oil Co., 150 Ind. 21, 49 N. E. 809 (affirmed, Ohio Oil Co. v. Ind., 177 U. S. 190), to enjoin violation of its oil and gas conservation laws. The state court held:

"The courts of the state and United States are open to the state, both in its sovereign capacity and by virtue of its corporate rights."

We so hold. Louisville & N. R. Co. v. Commonwealth (Ky.) 31 S. W. 476 (affirmed, Louisville & N. R. Co. v. Ky., 161 U. S. 677); Muncie Nat. Gas Co. v. City of Muncie, 160 Ind. 97, 66 N. E. 436; Stockton v. Cent. R. Co. (N. J.)) 24 Atl. 964; In re Debs, 158 U. S. 564.

It cannot be doubted that the state has an interest in the subject-matter such as enables it to appear as party plaintiff in this action. This right exists independently of a statute and as an incident to sovereignty. State v. Metschan, 32 Ore. 372; 46 P. 791; State v. Delesdenier, 7 Tex. 76; Wolffe v. State, 79 Ala. 201; State ex rel.

Haskell v. Huston, 21 Okla. 782, 97 P. 982. Likewise the state may maintain the action in its proprietary capacity. State v. Pinckney, 22 S. C. 484; State v. Pacific Guano Co., 22 S. C. 50; State v. Paxson 119 Ga. 730, 46 S. E. 872; Brown v. State, 5 Colo. 496; McCaslin v. State, 38 Ind. App. 184, 75 N. E. 844.

The fact that the Corporation Commission or any other court is authorized to punish an act criminally does not prevent equity from affording relief by injunction where permanent or irreparable injury to property will, in the absence of such relief, be caused by acts sought to be restrained. 5 Pomeroy's Eq. Jurisprudence, secs. 476, 477; Terr. v. Long Bell Lbr. Co., 22 Okla. 890, 99 P. 911; Choctaw Pressed Brick Co. v. Townsend, 108 Okla. 235, 236 P. 46; State v. Ohio Oil Co., 150 Ind. 21, 49 N. E. 809; 4 Pomeroy Eq. Juris. (3rd Ed.) section 1338.

The trial court erred in sustaining the demurrer and in dismissing the cause of action under the theory that it had no jurisdiction of the subject-matter whereby it might grant injunctive or other equitable relief.

Cause reversed and remanded, with directions to proceed conformably to the views herein expressed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur.