## 38511. CARTER *et al.* v. OXFORD, Commissioner.

DECIDED NOVEMBER 1, 1960—REHEARING DENIED
DECEMBER 1, 1960.

*Hatcher, Smith, Stubbs & Rothschild, J. Madden Hatcher, Sutherland, Asbill & Brennan, James H. Wilson, Jr., James P. Groton,* for plaintiffs in error.

*Moise, Post & Gardner, Allen Post, Hugh E. Wright,* amicus curiae.

*Eugene Cook, Attorney-General; Ben F. Johnson, Jr., Deputy Assistant Attorney-General,* contra.

*Martin, Snow, Grant & Napier,* for interested parties.

TOWNSEND, Judge. When the first Georgia income tax act was enacted in 1931 (Ga. L. 1931, Ex. Sess., p. 41) it was provided in *Code* § 92-3120 (d): "The distribution to the taxpayer of the assets of a corporation shall be treated as a sale of the stock or securities of the corporation owned by him, and the gain or loss shall be computed accordingly." This left no doubt but that, when a corporation was dissolved, its assets, including accumulated earned surplus retained over the life of the corporation, which was exchanged for stock on dissolution constituted a sale and not a dividend. However the act of 1937 (Ga. L. 1937, pp. 109, 112) added a definition of the word "dividend" in *Code* § 92-3002 (o) which included the following sentence: "It includes such portion of the assets of a corporation distributed at the time of dissolution as would in effect be a distribution of earnings." It is now contended by the Revenue Commission that the entire earned surplus is not "assets . . . treated as a sale of the stock" but is "in effect a distribution of earnings." If correct, such interpretation effects a repeal by implication of so much of *Code* § 92-3120 (d) as allows all assets, including those representing accumulated earned surplus, to be

treated as a sale. It accordingly becomes necessary to ascertain the intention of the legislature in enacting the amendment in view of the facts existing at that time.

Four factors suggest themselves as bearing on this problem. First, the question was not a novel one for it had been giving trouble to the Federal Government in respect to returns under the Federal income tax act upon which much of our income tax law is patterned. Between 1913 and 1936 the law as to liquidating dividends had been changed six times, and in 1936 the provisions of the 1934 statute requiring liquidating dividends to be treated as ordinary income were dropped and Congress went back to the 1924 method of treating them as capital gains. See Lynch v. Hornby, 247 U. S. 339 (38 S. Ct. 543, 62 L. Ed. 1149); 38 Stat. 167; 39 Stat. 756, 757; 40 Stat. 329, 337; 40 Stat. 1058, 1059; 42 Stat. 227, 228; 43 Stat. 254, 255; 48 Stat. 683, 711; 49 Stat. 1648, 1687; 47 Yale Law Journal 1146. Section 115 (g) (1) of the Federal Revenue Code in effect in 1937 (Cf. Revenue Code of 1954, 26 U. S. C. A. §§ 302, 331) provided as follows: "If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend." The applicable U. S. Treasury Department regulation thereunder (Reg. 94, Art. 115-9) which has the force and effect of law (Stegall v. Thurman, 175 F. 813) provides as follows: "A bona fide distribution in complete cancellation or redemption of all of the stock of a corporation, or one of a series of bona fide distributions in complete cancellation or redemption of all of the stock of a corporation, is not essentially equivalent to the distribution of a taxable dividend." No question has ever arisen but that this statute allowed capital gains treatment of earned surplus on the bona fide dissolution of a corporation. *Corporate Liquidations and the Federal Income Tax,* University of Penn. Law Review, Vol. 89, p. 907. So it

can at least be assumed that, even though at the time of passage of our 1937 amendment to the State income-tax law there was no capital gains deduction (this was added by Ga. L. 1952, p. 405) and accordingly no tax advantage either way in treating the earned surplus as a sale or an ordinary taxable dividend, the legislature was aware of the distinction between the two methods of treatment.

Second, being aware of such difference, had the legislature desired to change the existing State law on the subject it appears that it would have done so directly. The 1937 amendment is a rather complete overhaul of the 1931 act. It was not merely an addition to the original act; the legislature adopted the pattern of amending each Code section separately. Twenty-four Code sections were so amended or rewritten, 10 of which are to be found in Chapter 92-31. Yet Code § 92-3120 was not changed in any respect although this is the only Code section dealing with treatment of the assets of the corporation on dissolution, which offers some intrinsic evidence that the legislature did not intend to alter this method of dealing with assets.

Third, this is all the more true because the original provisions of Code § 92-3120 (5) provide for treating certain distributions as taxable dividends where a corporate reorganization, rather than a corporate dissolution, is effected.

Fourth, subsequent treatment of the same subject matter by the legislature may shed some light on the question of the original intent. Patten v. Miller, 190 Ga. 152 (8 S. E. 2d 786). Code § 92-3120 was amended in 1956 (Ga. L. 1956, pp. 608, 609) by the addition of subdivision (h) providing, in case of a distribution in complete liquidation of a corporation in the circumstances outlined in 26 U. S. C. A. § 333 (Internal Revenue Code of 1954) that gain shall be recognized as therein provided. Section 333 provides a method by which, if the taxpayer elects, he may, by reporting that portion of the accumulated earned surplus received in the distribution as a dividend, acquire an unrecognized capital gain on that portion of the capital gain not represented by money or negotiable securities and defer tax payment on the latter assets until they are liquidated. This part of the Federal act has been incorporated in our State law by reference,

and under it the taxpayer must make written election to receive dividend treatment of the accumulated surplus on dissolution in order to defer the capital gains tax on a portion of the other assets. That part of the Federal law, adopted by *Code* § 92-3120 (h) at least, would be inapplicable if under State law the taxpayer were given dividend treatment of the accumulated earned surplus in any event, and the general legislative scheme of conforming the State and Federal income-tax plans as relating to corporate dissolutions, as well as the practical efficiency resulting from such conformation, readily appears.

There is accordingly valid room for doubt as to whether the legislature intended by the last sentence of *Code* § 92-3002 (o) to change the plain and unambiguous wording of *Code* § 92-3120 (d) without reference to the latter section, and it becomes proper to consider whether a meaning may be given to the amendment which will harmonize it with the earlier act instead of effecting a partial repeal by implication, since the intention of the legislature to amend an existing law by implication "must be clearly and unquestionably shown by the provisions of the amending act." *Brinkley v. Dixie Construction Co.*, 205 Ga. 415 (54 S. E. 2d 267). In such a situation "the contemporaneous practical construction of ambiguous or doubtful provisions of an act by the department of the State empowered with its administration or supervision will be given great weight, and will not be disturbed except for weighty reasons." *State of Georgia v. Camp*, 189 Ga. 209 (1) (6 S. E. 2d 299). " 'Contemporaneous construction' within the meaning of the rule, is the construction which executive departments or officers charged with the enforcement of the statute give to it at or near the time of its enactment." 82 C. J. S. 768, Statutes, § 359.

It appears from this record that one of the regulations of the State Revenue Commissioner interpreting *Code* § 92-3119 (d) (Ga. L. 1952, p. 405 et seq.) relating to computation of capital gain from the sale or exchange of capital assets is as follows: "The act was designed to closely follow the provisions in Federal law pertaining to capital gains and losses, and for this reason, the State Revenue Commissioner adopts, for all practical purposes the Federal regulations relating to the subject, except

in those cases where the laws conflict." The laws did not conflict on this issue in the estimation of the Revenue Commissioner prior to the instigation of this case, as shown by the fact that the Revenue Commissioner had adopted a regulation interpreting *Code* § 92-3002 (o) which was the exact language of § 115 (g) (1) of the Federal Internal Revenue Code, supra, as follows: "If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of accumulated earnings or profits, shall be treated as a taxable dividend." We have already shown that no question has ever been raised over the meaning of the Federal statute; it allows capital gains treatment of liquidating dividends on dissolution and has always been so understood and applied. The State regulation further provides: "Any distribution made to a shareholder, *except in liquidation,* is to be treated as ordinary gain regardless of the source of the profits which are distributed." (Emphasis added). There is accordingly no doubt but that the contemporaneous interpretation given the act by the Revenue Commissioner was to treat a distribution of assets to the stockholders upon dissolution in the same manner that such distribution was treated under the Federal law. Both sides to this controversy agree that under Federal law such assets are entitled to capital gains treatment where there is a bona fide dissolution of the corporation; they become subject to dividend treatment so as to be taxed as ordinary income only in those situations where the liquidation is not a bona fide dissolution but is a scheme or device to effect a distribution which is in effect a taxable dividend through a change in the form but not the substance of a corporate business activity. See also Harvard Law Review, Vol. 55, p. 835 et seq.

The Revenue Commission now wishes this court to take a contrary position from that which it has adopted in its own regulations. The new position now offers a tax advantage to the State, but the original position was adopted at a time when

there was no difference in State law, taxwise, whether liquidating dividends were considered as ordinary dividends or as capital assets. The original position of the Revenue Commission as shown by its regulations adopted in the language of the Federal statute contravenes no rule of law. It has the advantage of avoiding a repeal by implication of a prior existing unambiguous statute by virtue of an amendment where the circumstances surrounding the amending act show no indication on the part of the legislature to effect such a repeal. It distinguishes between bona fide and mala fide transactions in a manner which is both fair and in accordance with similar provisions in the Federal act. We accordingly construe the words of *Code* § 92-3002 (o) "such portion of the assets . . . distributed . . . as would in effect be a distribution of earnings" to mean such portion of the assets as would be "essentially equivalent to the distribution of a taxable dividend" under 26 U. S. C. A. § 115 (g) and the regulations of the Revenue Commissioner interpreting the Code section.

In the present instance it is stipulated that the distribution was made in a bona fide dissolution of the corporate business. Therefore, if the meaning of the Federal act incorporated in the State regulation applies, the tax should be computed on a capital gains basis, which is what the taxpayer did. We hold this to be the proper construction of the law. It was accordingly error for the judge of the superior court to sustain the deficit assessment of the Revenue Commissioner.

In reaching this conclusion we have not ignored Reeves v. Turner, 289 Ky. 426 (158 S. W. 2d 978), and Collins v. Kentucky Tax Commission (Ky.) 261 S. W. 2d 303. Those cases are authority for the proposition that the provisions of our *Code* § 92-3002 (o) above quoted, standing alone, mean that accumulated earnings exchanged for stock on liquidation are to be taxed as income to the taxpayer, since the Kentucky statute included in its definition of dividend "such portion of the assets of a corporation distributed at the time of dissolution as is in effect a distribution of earnings or profits." The Kentucky statute was broader, of course (it has since been repealed) since it also included profits of the corporation, but the Kentucky statute had

no provision similar to our *Code* § 92-3120(d) which provides that distribution to the taxpayer of the assets shall be treated as a sale of stock. As pointed out in the Reeves case, the Kentucky provision for excluding, for purposes of ascertaining income, sales of capital assets held for more than two years refers to the imposition of tax on the corporation, not on the shareholder. Accordingly, a very different situation was presented to the Kentucky courts from that here involved.

*Judgment reversed. Carlisle, J., concurs. Frankum, J., concurs specially.*

FRANKUM, Judge, concurring specially. The crux of the question is whether the last sentence of *Code* § 92-3002 (o) repeals by implication *Code* § 92-3120 (d), which latter provision treats the liquidation of a corporation as a sale—hence, entitled to capital gains treatment if the transaction is otherwise qualified. Upon summary reading of the two sections, they seem diametrically opposite as to the formulas for the treatment of a taxpayer in a corporate liquidation situation. The Commissioner insists upon a literal interpretation of *Code* § 92-3002 (o). However, it is to be noted that for all practical purposes the State has adopted all of the applicable Federal regulations with the exception of the Federal regulation relative to "sham" or "mala fide" liquidations (I am not unmindful of the phrases used in the regulations concerning *Code* § 92-3119 (d) that "the State Revenue Commissioner adopts, for all practical purposes the Federal regulations relating to the subject [capital gains], *except in those cases where the two laws conflict."* (Emphasis added)). Although the Commissioner agrees that the taxpayer is entitled to capital gains treatment under the Federal statute, as this is a bona fide liquidation, counsel for the Commissioner argues that there is no provision for distinguishing between a bona fide liquidation and a mala fide liquidation as in a case under applicable Federal statutes. Consequently, the Commissioner contends that the State statute requires that bona fide liquidations be treated in the same manner as "sham" or "mala fide" liquidations, viz., all assets which represent accumulated earnings shall be treated as a dividend, *ipso facto,* and be included as ordinary income. Construing the two Georgia statutes I do not reach this conclusion.

An unquestionable rule of statutory construction is that a repeal of a statute by implication of another statute is not favored and will not be given effect if both statutes can reasonably operate together. *Lewis v. City of Smyrna,* 214 Ga. 323 (104 S. E. 2d 571) ; *Brinkley v. Dixie Construction Co.,* 205 Ga. 415 (54 S. E. 2d 267). In so doing the courts will look to all statutes relating to the same subject matter and construe each in relation to the others, and harmonize them whenever possible to ascertain the legislative intent. *Ryan v. Commissioners of Chatham County,* 203 Ga. 730 (48 S. E. 2d 86).

All parties agree that under the '31 act (*Code* § 92-3120 (d) ; Ga. L. 1931, p. 41) with nothing added, the taxpayer would be entitled to a capital gains treatment. It can reasonably be assumed that the legislature took the law as it stood when enacting the amendment (*Code* § 92-3002 (o); Ga. L. 1937, pp. 109, 112) in 1937. The same is true when the legislature enacted the capital gains treatment in 1952 (Ga. L. 1952, p. 405). Thus, we reach the conclusion that the legislature intended for the statutes to stand together. If a corporation can liquidate under the provision of *Code* § 92-3120 (d) and be subject to capital gains treatment, what purpose would be served by the last sentence of *Code* § 92-3002 (o)? It is true that a corporation in a sales situation is allowed a capital gains treatment even though ordinary yearly earnings are accumulated over a period of time to the date of sale. Under the Commissioner's interpretation, it is these earnings, in a liquidation situation, that should be taxed as ordinary income under the provision of the 1937 amendment (*Code* § 92-3002 (o)). Such interpretation, if adopted, would be in conflict with *Code* § 92-3120 (d) providing for the method of a liquidation of a corporation as a sale. Hence, the result would be the repeal of *Code* § 92-3120 (d) by implication.

Looking further, it is clear that circumstances can arise for which *Code* § 92-3002 (o) is applicable, namely, "mala fide" or "sham" transactions, which were anticipated by the Federal regulations though not adopted by the State regulation. A corporation could exercise a "paper liquidation" for the sole purpose of obtaining the accumulated yearly earnings which had

thus far avoided taxation as ordinary income, because the distribution to the stockholders as yearly dividends had not occurred. By liquidating and destroying the legal fiction, viz., the corporation, the individual taxpayer who owned portions of the legal fiction could obtain a tax advantage of capital gains treatment as to all the gains of a corporation, including accumulated yearly earnings. The same taxpayers could maintain control of the physical assets and later form another corporation. Thus, another cycle begins *ad infinitum*. Certainly, this would be a dissolusion which would "in effect be a distribution of earnings" within the meaning of *Code* § 92-3002 (o). Bearing in mind that at the time of the adoption of *Code* § 92-3002 (o), a liquidation was not considered a distribution of earnings but was treated as a sale, a liquidation under *Code* § 92-3120 (d) was not a distribution of earnings, but a distribution of assets, while *Code* § 92-3002 (o) contemplates not a distribution of assets but the circumstances of a subterfuge to bleed off the profits within a preferred treatment classification, viz., a capital gain. My interpretation of the statute and the intention of the legislature is to accomplish the purpose of preventing sham liquidations. While the construction had no tax significance until 1952, nevertheless, it is a valid intendment of the statute. Hence, it was unnecessary for the Commissioner to adopt the Federal regulations relative to mala fide liquidations after the legislature enacted the capital gains method for computing income taxes. Though *Code* § 92-3002 (o) does not use the same words as the Federal statute and regulations, it accomplishes the same purpose. With this statutory interpretation of *Code* § 92-3002 (o), and treating it *in pari materia* with the other statutes on the same subject matter, no repeal by implication is accomplished. This interpretation seems to be in spirit with the evil sought to be prevented, and with this court's interpretation of the Commissioner's position as reflected by his adoption of the applicable Federal regulations almost *in toto*. With this interpretation no conflict is encountered between the other statutes or other regulations.

On Motion for Rehearing.

Counsel for the State strenuously insists that the court, in its

opinion, has reasoned circuitously by refuting the Commissioner's contention because it would necessarily repeal by implication *Code* § 92-3120 (d), which construction is not favored by the law, and, thereafter, under the rule of harmonious construction, the court proceeded to repeal a portion of the same Code section by its opinion. To this contention it might be said that all judicial constructions balancing two statutes which limit, or, in any way, restrict one statute are, in some sense, a repeal by implication, but the court has the task of reconciling the statutes to a working formula if at all possible under recognized rules of construction. It is our feeling that to adopt counsel's contention, that *Code* § 92-3002 (o) should be given its full literal meaning, would be to repeal *Code* § 92-3120 (d) *in toto* with reference to any accumulated earnings. With the court's interpretation, *Code* § 92-3002 (o) does not repeal by implication *Code* § 92-3120 (d), but only modifies it when it is shown that a liquidation is a subterfuge to pay a dividend. *State Revenue Commission v. Glenn,* 61 Ga. App. 567 (6 S. E. 2d 384). Counsel for the Commissioner insists that his contention is only a modification and does not work as a repeal by implication. However, the distinction is a question of degree. It is also largely a question of semantics. As to the difference between modification and repeal, this court deems it necessary to say that it feels the court's interpretation is a modification and does not operate to repeal *Code* § 92-3120 (d).

Intermingled with this problem, though not dealt with specifically in either the majority opinion or the special concurrence, is "when does profits or money earned take on peculiar characteristics of assets whereby a different taxing formula is used upon the happening of a tax event?" For example, one might say a corporation is the sum total of its undistributed earnings, its physical assets plus the accrued gain (or loss) of value in its physical assets, together with the value of its good name and other incidentals. Yet, in a sales situation the undistributed earnings take the characteristic of an asset of the corporation and are taxed accordingly, i.e., capital gains. It is still the same money which the corporation earned and which, if paid as a dividend, would be considered normal income. However, the

legislature has seen fit to say this is a particular classification that will be taxed differently from ordinary income. Likewise, in a liquidation situation the legislature has prescribed a different method of taxing the accumulated earnings by treating the event the same as a sale. *Code* § 92-3120 (d). These are the same earnings, but taxed differently. It is our opinion that the basic philosophy for this treatment is much the same as that of capital gains. It would be unfair to tax an individual in one year at a high percentage of taxation on accumulated earning on which, if spread out over the several years they were earned, the taxpayer would be taxed at a lower percentage. In the last analysis the liquidation is a very final act much the same as a sale. In the event the taxpayer is attempting to obtain earnings by a sham liquidation, *Code* § 92-3002 (o) would allow the Commissioner to tax the earnings as normal income.

*Judgment adhered to on rehearing.*