21154. OXFORD, State Revenue Commissioner v. CARTER *et al.*

Argued April 10, 1961—Decided May 9, 1961—
Rehearing denied May 22, 1961.

*Eugene Cook, Attorney-General, Ben F. Johnson, Jr., John E. Dean, Robt. W. Goodman, Assistant Attorneys-General,* for plaintiff in error.

*Sutherland, Asbill & Brennan, James H. Wilson, Jr., Hatcher, Smith, Stubbs & Rothschild, J. Madden Hatcher, Jas. P. Groton,* contra.

*Powell, Goldstein, Frazer & Murphy, Jas. M. Frazer, Alston, Sibley, Miller, Spann & Shackelford, Devereaux McClatchey, Louis Regenstein, Jr., Martin, Snow, Grant & Napier, Jones, Sparks, Benton & Cork, Moise, Post & Gardner, Wm. Linkous, Jr.,* for parties at interest not parties to record.

Mobley, Justice. 1. This case is here on grant of certiorari to the Court of Appeals in *Carter v. Oxford,* 102 Ga. App. 762 (118 S. E. 2d 216). The case involves a tax question which is of importance in the administration of the Georgia income tax law.

After careful consideration of the records and briefs of counsel, we are of the opinion that the Court of Appeals was correct in holding that the distribution of all the assets of the corporation to its stockholder in complete and final liquidation of all of his stock should be treated, as provided in *Code Ann.* § 92-3120 (d), as a sale of his stock and the entire gain computed and taxed accordingly, that is, as a capital gain under *Code Ann.* § 92-3119 (d) (Ga. L. 1952, p. 405 et seq.) The facts, issues, and reasons for their conclusions are well stated by the Court of Appeals in the opinion by Presiding Judge Townsend and concurring opinion by Judge Frankum, and we will not restate them here. However, the question of whether *Code Ann.* § 92-3002 (o) (Ga. L. 1937, pp. 109, 112) is open to judicial construction is so vital to a decision in this case that we will elaborate upon the discussion of it by the Court of Appeals.

The Commissioner insists that the only question presented is a legal question, that is, whether *Code Ann.* § 92-3002 (o), which defines dividends and also states, "It [the word 'dividend'] includes such portion of the assets of a corporation distributed at the time of dissolution as would in effect be a distribution of earnings" means what it says or not. The Commissioner's position is that the language of this section is clear and unambiguous and that, as stated in *Aldridge v. Federal Land Bank of Columbia,* 203 Ga. 285 (46 S. E. 2d 578), "If the legislature does plainly and distinctly declare its intention, the act is not open to construction; it needs, and can receive none."

We have no argument with the quoted statement of law, and we agree that, unless § 92-3002 (o) is open to construction, the Commissioner is correct in his contention that the taxpayer is not entitled to capital-gains treatment on gains received upon the liquidation of his corporation.

The rule which states that a statute which is clear and unambiguous may not be judicially construed has no application in this case for any one of three reasons:

(1) *The instant case is not one involving one statute; three statutes must be read and considered together.* The three statutes which must be considered are: (a) § 92-3120 (d), enacted in 1931, which treats corporate distributions on liquidation as *sales.* (b) § 92-3002 (o), enacted in 1937, which defines dividends and also states, "It [the word 'dividend'] includes such portion of the assets of a corporation distributed at the time of dissolution as would in effect be a distribution of earnings." (c) § 92-3119 (d), which is the capital-gains section of the Code.

The ultimate question for decision is whether the gain realized will be treated as capital gain or ordinary income, and that question cannot be answered by a consideration of *Code Ann.* § 92-3002 (o) alone.

In the construction of a statute, all laws in pari materia should be considered in order to ascertain the intention of the legislature. *Harrison v. Walker,* 1 Ga. 32. A statutory rule must be construed consistently with the whole system of pleading and practice of which it forms a part. *McDougald v. Dougherty,* 14 Ga. 674.

To the above rules on pari materia, Georgia has recognized, by way of obiter dictum, an exception. In *Ryan v. Commissioners of Chatham County*, 203 Ga. 730 (48 S. E. 2d 86), it was stated that statutes in pari materia could not be looked to where the language of the statute under consideration was clear and unambiguous. In this case, however, that rule comes into conflict with other recognized and well-settled rules of statutory construction, viz.: (1) Repeals by implication are not favored. *Murray v. State*, 112 Ga. 7 (37 S. E. 111); *Cornwell v. Atlanta Trust Co.*, 177 Ga. 303 (170 S. E. 194); *Moore v. State*, 150 Ga. 679 (104 S. E. 907). (2) The intention of the legislature is the cardinal guide to construction of statutes and, when plainly collected, should be carried into effect, though contrary to the literal sense of terms. *Erwin v. Moore*, 15 Ga. 361. (3) Where a statute is susceptible of two constructions, one of which would render it meaningless, the intention of the legislature should be construed so as not to render the statute absurd and ineffective. *Stelling v. Richmond County*, 81 Ga. App. 571 (59 S. E. 2d 414); *Scott v. Mayor &c. of Mount Airy*, 186 Ga. 652 (198 S. E. 693).

Thus, when a literal interpretation of a statute would have the effect of (1) repealing a prior statute by implication, and (2) rendering the statute under consideration meaningless, the court should consider all statutes in pari materia and attempt to reconcile and harmonize them whenever possible.

(2) *The 1937 statute is ambiguous, and for that reason it is capable of judicial construction.*

Even if the statute is read alone, it is ambiguous. It does not plainly mean what the Commissioner says it means. First, in the corporate field the terms "dividend" and "distribution of earnings" signify recurrent distributions from a continuing corporate enterprise, and not the final distribution in liquidation. Second, the subjunctive language, "as would in effect be," is deliberately qualified and clearly indicates that the provision is intended to deal with unusual dissolution situations. The statute is not a clear and simple statute imposing a mathematical test, but rather is a statute imposing in qualified language a test which is based on the "effect" of corporate transactions, and

necessarily requires a comparison of the transactions involved with ordinary dividend transactions.

An ambiguity arises because the phrase "distribution of earnings" is capable of two reasonable interpretations. It might mean a recurrent distribution of a continuing corporation, i.e., a dividend, as contended by the taxpayer or, given a literal interpretation, it might mean any transfer of earnings to a shareholder at any time whatever.

Furthermore, in determining whether or not the statute is ambiguous, the court need not consider it by itself without reference to other statutes on the same subject. As stated in *Carroll v. Ragsdale*, 192 Ga. 118 (15 S. E. 2d 210), "Seeking secret legislative meanings at variance with the language used is a perilous undertaking which is quite as apt to lead to an amendment of the law by judicial construction as it is to arrive at the actual thought in the legislative mind. . . But where an ambiguity exists either because of uncertainty in the meaning of words, *conflicts with previous laws*, or conflicts between different clauses in the same statute, courts should look beyond the verbiage and discover the intent." (Italics ours.)

When *Code Ann.* § 92-3002 (o) is read with *Code Ann.* § 92-3120 (d), a *previous law* on the same subject in the same title of the Code, the ambiguity becomes apparent.

(3) *Even if the statute is not ambiguous, it may be construed because to give it a literal interpretation would render it meaningless.*

"While we recognize the rule that statutes in pari materia may not be resorted to where the language of the statute under consideration is clear, it is equally as well settled that, where the terms of the statute to be construed are ambiguous *or its significance is of a doubtful character*, it becomes necessary to give proper consideration to other related statutes in order to ascertain the legislative intent in reference to the whole system of laws of which the doubtful statute is a part." (Italics ours.) *Ryan v. Commissioners of Chatham County*, 203 Ga. 730, 732, supra.

In *Board of Tax Assessors of Decatur County v. Catledge*, 173 Ga. 656 (160 S. E. 909), this court treated the problem as follows: "The cardinal rule in the construction of legislative enactments

is to ascertain the true intention of the General Assembly in the passage of the law. As a general rule, the use of plain and unequivocal language in a legislative enactment obviates any necessity for judicial construction, and indeed forbids an interpretation of the meaning of the words employed by the General Assembly."

"An exception to the general rule just stated is presented by the use of words the meaning of which in general acceptation is apparently obvious, and yet the purpose of the legislature would be defeated were the words employed construed literally. Courts may construe the language employed in the act in connection with the context, and ascertain the legislative intent as derived from the old law, the evil, and the remedy, and will not defeat the intention and purpose of the General Assembly by giving effect to words which would render the purpose of the General Assembly in the passage of the enactment futile, unenforceable, or ineffectual."

These principles of law were forcefully reiterated in *Gazan v. Heery*, 183 Ga. 30 (187 S. E. 371, 106 A.L.R. 498).

Thus, it is apparent that, if a literal interpretation of a clear and unambiguous statute would render the statute meaningless, the court may consider other statutes on the same subject with the statute in question.

If the interpretation urged by the Commissioner is accepted, i. e., the literal interpretation, the statute would have been meaningless when passed.

Why would the General Assembly, in 1937, pass a law to tax distributions on liquidation of corporations at ordinary income rates when such distributions were already taxed at ordinary income rates and the capital gains provisions were not added to the Code until 1952?

The taxpayers' explanation for the 1937 enactment is more plausible. They contend that in 1937 the common corporate practice was to liquidate corporations at their depression value and take losses on the difference between the value at that date and the sole stockholder's cost or original basis for the stock. In this manner earnings could be withdrawn from a corporation without paying any tax whatever.

It is obvious then that a literal interpretation of *Code Ann.* § 92-3002 (o) would render it meaningless when enacted. Rather than ascribe such an intent to the General Assembly, the court should construe the statute with other statutes on the same subject.

2. Accordingly, since the statute is open to construction, the Court of Appeals properly looked to the legislative intent in enacting *Code Ann.* § 92-3002 (o). Without repeating their review of the history of the legislation and their analysis of the questions involved in determining the legislative intent, suffice it to say that we are of the opinion that the Court of Appeals reached the correct conclusion in holding that the General Assembly did not intend by the enactment of *Code Ann.* § 92-3002 (o) in 1937 to repeal *Code Ann.* § 92-3120 (d), which was enacted in 1931; that the last sentence of *Code Ann.* § 92-3002 (o), defining the word "dividend" to include "such portion of the assets of a corporation distributed at the time of dissolution as would in effect be a distribution of earnings," does not apply to bona fide liquidations of corporations, as in this case, and that the distribution to this taxpayer of the assets of the corporation should be treated as a sale of the stock of the corporation, and the gain computed as a capital gain and taxed accordingly under *Code Ann.* § 92-3119 (d).

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., Head, P. J., and Candler, J., who dissent.*

CANDLER, Justice, dissenting. As pointed out in the majority opinion, this case involves the amount of income tax due the State of Georgia for 1956 by W. N. Carter, Jr., and his wife, Sarah C. Carter. The State Revenue Commissioner refused to approve their joint return for such year and issued a deficit assessment against them for $9,064.51, plus interest. On their appeal of the assessment to the Superior Court of Muscogee County, the Commissioner's action was upheld. The Court of Appeals reversed the judgment, and this court, on application therefor, granted the writ of certiorari. One item of income reported by such taxpayers for the year involved was a stated amount which Mr. Carter, as sole stockholder of a named corporation, received through distribution to him of all of the assets which such corporation had at the time of its dissolution on February 14, 1956, and this

is the reported income on which the Revenue Commissioner made a deficit assessment. The Court of Appeals, in reversing the judgment of the trial court, held that these taxpayers, under the provisions of *Code Ann.* § 92-3120 (d), as codified from this State's income tax statute of 1931, had a right, as they did, to treat the entire amount as so distributed to Mr. Carter as proceeds received by him from a sale of his stock in the dissolved corporation, and to have the amount of income tax he should pay on the profit he earned from such a sale of his stock computed on the basis of a capital gain and taxed as such under the provisions of *Code Ann.* § 92-3119 (d). The affirmance of that holding by four of the Justices of this court is in my opinion palpably erroneous; it gives no effect whatsoever to the provisions of *Code Ann.* § 92-3002 (o), which comes from a 1937 amendment to our income tax act of 1931, and such amendment in part declares that, "The word 'dividend' when used in this law for the purpose of defining a taxable dividend means any distribution made by a corporation out of its earnings or profits to its shareholders or members whether such distribution be made in cash or in other property or in a stock different from the stock on which the dividend is paid. It includes such portion of the assets of a corporation distributed at the time of dissolution as would in effect be a distribution of earnings."

A casual reading of this State's income tax act of 1931 and the amendment to it of 1937, as the pertinent part of each relates to the imposition of a tax on the funds which a corporate stockholder receives through a distribution of its earnings on dissolution of the corporation, convinces me that the legislature by the 1937 amendment fully intended to and did actually change the taxable status of the funds so received by such a stockholder from a distribution of the corporation's earnings. As previously stated, the pertinent part of this State's 1931 income tax act (§ 92-3120(d)) treated the amount which a stockholder received through a distribution of a dissolved corporation's assets as a capital gain if the amount so received by him exceeded the cost of his stock, and as a capital loss if the amount so received by him was less than the cost of his stock. Hence, under the act of 1931, an income taxpayer in computing his tax for the year

during which such a distribution was made to him could report a taxable gain on his stock or a taxable loss thereon as the case might be, and compute his tax accordingly. But the 1937 amendment to the act of 1931 expressly and emphatically declares that any funds which a stockholder of a dissolved corporation receives through a distribution of its earnings shall for income tax purposes be treated as a dividend on his stock; that is, as ordinary taxable income, and this is unquestionably true whether it be in fact a gain or a loss to him on the cost of his stock. But by the amendment of 1937 the legislature, by words which ought not to be misunderstood, has clearly said that the funds which a stockholder receives through a distribution to him of a dissolved corporation's earnings shall be treated for income tax purposes as a dividend on his stock; and under *Code Ann.* § 92-3107 (a), a dividend which one receives on corporate stock is taxable as any other ordinary income of the taxpayer.

In reaching the conclusion which I have expressed in this dissent, I am not unmindful of the rule that repeals by implication are not favored by law, and that a subsequent statute repeals prior legislative action by implication only when they are clearly and indubitably contradictory, when they are in irreconcilable conflict with each other, and when they cannot reasonably stand together. But after giving full effect to this rule, I am compelled to conclude that the legislature by the 1937 amendment intended to and did repeal by implication *Code Ann.* § 92-3120 (d) insofar as it relates to the taxable status and the method to be employed in computing the amount of income tax due this State on that part of the earnings of a corporation distributed to a stockholder thereof on dissolution of the corporation for any reason. In this connection, see *Moore v. Baldwin County,* 209 Ga. 541 (74 S. E. 2d 449), and the several cases there cited. The 1937 amendment, by the use of unambiguous words, plainly says that the earnings of a corporation when distributed to a stockholder upon dissolution of the corporation shall be treated as a dividend on his stock and taxed as such, and to this extent it is in irreconcilable conflict with the pertinent part of the 1931 act which declares that, "The distribution to the taxpayer of the assets of a corporation shall be treated as a sale of

the stock or securities of the corporation owned by him, and the gain or loss shall be computed accordingly." For the reasons stated above, it is my opinion that the judgment rendered by the Court of Appeals should be reversed. I am authorized to say that Chief Justice Duckworth and Presiding Justice Head concur in this dissent.

DUCKWORTH, Chief Justice, dissenting. While I fully concur in all that is said by Mr. Justice Candler in his dissent, and also by Presiding Justice Head in his dissent, I should like to state these additional reasons why I dissent. To give my approval to the majority opinion I am convinced that I would have to violate these accepted and binding rules of law concerning construction by courts of legislative enactments, to wit: (1) where the law is unambiguous—that is, not susceptible to two or more meanings—it stands self-construed, and courts are bound to accept it as written; (2) ascertainment and effectuation of legislative intent is the supreme rule of construction; and (3) if two acts are in irreconcilable conflict, the later repeals the former by implication.

The statute with which we are here concerned was enacted in 1937, and is found in *Code Ann.* § 92-3002 (o) (Ga. L. 1937, pp. 109, 112), and is as follows: "The word 'dividend' when used in this law for the purpose of defining a taxable dividend *means any* distribution made by a corporation out of its earnings or profits to its shareholders or members whether such distribution be made in cash or in other property or in a stock different from the stock on which the dividend is paid. *It includes such portion of the assets of a corporation distributed at the time of dissolution as would in effect be a distribution of earnings.*" There is not an ambiguous word, or arrangement of words, in this statute. The legislature was unwilling to risk judicial speculation under the pretense of construction to fix its intent, and consequently here plainly spelled out what it intended by the use of the word "dividend." I believe the majority has failed to give effect to the constitutionally reserved exclusive jurisdiction of the Legislative Department. When the legislature has plainly, as here, stated its intention, courts have a duty to respect and effectuate that intention. Since the legislature included all dissolutions, the

majority should not judicially amend this by limiting it to malevolent dissolutions. By thus writing into the law something that the legislature refused to write into it, the legislature is defeated by judicial usurpation of its exclusive powers. If courts are thus to change legislation in one instance, they can do so in all instances, and the result is the destruction of the legislature and establishment of judicial tyranny and consequent destruction of human liberty. I think proper judicial restraint, which is the noblest quality of a court, forbids its entering into that part of government reserved by the Constitution exclusively for the legislature, and there undertake to determine the wisdom of legislation to suit the judicial idea of what is wise by judicial fiat under the pretense of construction, where, under all recognized rules of law, no construction is needed or permissible. It can never be too strongly emphasized that the Executive and Legislative Departments have intelligence comparable to the Judiciary, and generally their experiences and information in fields of legislation far excel those of the Judiciary. If there be deficiencies in valid legislation, the remedy is legislative, and never judicial, action. I believe by citing, as support for its ruling, *Carroll v. Ragsdale*, 192 Ga. 118 (15 S. E. 2d 210), the majority reveal a lack of understanding of the rules for construing legislation. As the writer of that opinion, I know what controlled that decision. It was the legislative intent. That intent was therein specifically enumerated. And, in construing the amendment there involved, we said: "To justify a construction of the amendment here involved that would discard these fixed principles of legislation, there must be found in that amendment language which clearly manifests a legislative intent to depart from these policies." Had the majority read this statement, understood its true meaning, and applied it to the amendment here involved, they could not have failed to accept and abide by the plain legislative intent so unmistakably spelled out here. That would have demanded a reversal, rather than an affirmance, which is ordered. Indeed the very first sentence quoted from the above case warns of the peril where courts pretend to construe an unambiguous law, for it is as likely to be a judicial amendment as discovery of the legislative intent. That statement is

prophetic of what has happened here, where expressed intent is ignored and judicial amendment of the law is made.

Voluminous briefs were filed by both sides, but they are but little help in this case. Rules of construction first pointed out herein show that, when they are respected and applied to the statute here involved, no further legitimate judicial inquiry is permissible, for the intention of the law is unmistakable, and the duty of courts to follow it is absolute, and the only possible judgment conforming to these rules of law is one of reversal.

Finally, I would point out that for the legislature to have enacted this law as it is amended by the majority to limit dissolutions, therein referred to, to only malevolent ones, would have been pointless. As the law then stood, neither the taxpayer nor the State could have been affected in any remote degree by whether the dissolution was in good or bad faith. Thus is shown how the majority compounds the error by judicially amending the law in an utterly immaterial respect.

Presiding Justice Head concurs in this dissent.

HEAD, Presiding Justice, dissenting. The dissents of Mr. Chief Justice Duckworth and Mr. Justice Candler, in which I have heretofore concurred, demonstrate that the decision of the Court of Appeals is erroneous and should be reversed. I desire to add only one additional reason why, in my opinion, the decision of the Court of Appeals should be reversed.

Properly construed and applied, the rate of taxation was, or should have been, the same under *Code Ann.* § 92-3002 (o) (Ga. L. 1937, pp. 109, 112) and *Code* § 92-3120 (d) (the sections for consideration in this case), prior to the "capital gains" provision of our State Income Tax Law enacted in 1952 (Ga. L. 1952, pp. 405, 430). If, based on the capital gains provision of the Federal law, or for any other reason, the State Revenue Commissioner accepted returns wherein taxes on income were reported and paid under a capital gains provision, prior to the 1952 act, the acceptance of such returns did not, and could not, establish an administrative policy, since such returns were wholly unauthorized by law. The State's right to collect taxes under existing laws can not be defeated by the act of a public officer contrary to law. *Code* § 89-903. The State may be

estopped from asserting her rights only by legislative act. *State of Georgia v. Paxon & Cannon*, 119 Ga. 730 (46 S. E. 872).

By amendment (*Code Ann.* § 92-3002 (o) ), the General Assembly in 1937 (Ga. L. 1937, p. 109) removed "earnings" as a proper item to be included in the distribution of its assets upon the dissolution of a corporation. The act of 1937 had no immediate effect as to the tax liability of any taxpayer under the then existing income tax laws. Under the capital gains provision of the 1952 act, such earnings can not be classed as capital gains. The majority opinion permits earnings that should be distributed to shareholders to be withheld and accumulated until the dissolution of the corporation, and then to be taxed under the capital gains provision of the 1952 act, thus permitting the officers of the corporation, and not the law, to determine the rate of taxation on earnings.

Since the question involved in the present case is one of exemption from full taxation, the applicable rule of law is that exemptions from taxation should be strictly construed against the taxpayer and in favor of the taxing authority. *Mayor &c. of Macon v. Central Railroad &c. Co.*, 50 Ga. 620; *Brenau Association v. Harbison*, 120 Ga. 929, 933 (48 S. E. 363) ; *City of Columbus v. Muscogee Mfg. Co.*, 165 Ga. 259 (140 S. E. 860) ; *Cherokee Brick &c. Co. v. Redwine*, 209 Ga. 691 (75 S. E. 2d 550) ; *Oxford v. J. D. Jewell, Inc.*, 215 Ga. 616 (112 S. E. 2d 601). The majority opinion violates this long-established rule hereinabove set out, and for this additional reason I must dissent from the majority opinion. I am authorized to say that Mr. Chief Justice Duckworth and Mr. Justice Candler concur in this dissent.